UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IVAN KILGORE,

                Plaintiff,

        v.

H. CLAVIJO, et al.,

                Defendants.

Case No. 17-cv-04786-JST

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SUMMARY JUDGMENT MOTION; GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE; DENYING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE; REFERRING CASE TO PRO SE PRISONER MEDIATION PROGRAM**

Re: ECF Nos. 45, 86

Plaintiff has filed this *pro se action* pursuant to 42 U.S.C. § 1983, alleging that, from on or about September 23, 2015 to March 2016, Salinas Valley State Prison ("SVSP") correctional officers Benefield, Garcia, Colvin, Sandoval, and Clavijo violated his constitutional rights. *See generally* ECF Nos. 1, 8. Now pending before the Court are Defendants' motion for summary judgment and for judicial notice, ECF No. 45, and Plaintiff's request for judicial notice, ECF No. 86 at 46-48. For the reasons set forth below, the Court GRANTS Defendants' request for judicial notice, ECF No. 45-42; DENIES Plaintiff's request for judicial notice, ECF No. 86 at 46-48; GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment, ECF No. 45; and REFERS this action to Magistrate Judge Robert Illman for settlement proceedings pursuant to the Pro Se Prisoner Mediation Program.

**DISCUSSION**

Plaintiff alleges that defendants Benefield, Garcia, and Colvin denied him access to the courts, in violation of the First Amendment; defendants Benefield, Clavijo, and Garcia retaliated against him for filing grievances, in violation of the First Amendment; defendants Garcia and

United States District Court
Northern District of California

1   Benefield used excessive force on him, in violation of the Eighth Amendment; and defendants

2   Benefield, Garcia and Sandoval denied his request for medical attention for his right knee, in

3   violation of the Eighth Amendment's prohibition on deliberate indifference to an inmate's serious

4   medical needs.  Plaintiff also brings a state-law negligence claim against defendant Garcia for the

5   alleged use of excessive force.  *See generally* ECF Nos. 1, 8.

6   **I.       Relevant Factual Background[1]**

7       **A.       Defendants**

8          During the relevant time period, the named defendants held the following positions at

9   SVSP.  From 2012 to 2017, defendant Colvin was the senior librarian at SVSP.  Colvin Decl., ¶ 1

10  (ECF No. 45-13 at 1).  In December 2015, defendant Clavijo was permanently assigned to work as

11  a sergeant in housing unit TC 1 and 2, which houses inmates assigned to the Psychiatric Inpatient

12  Program at Salinas Valley State Prison; and intermittently worked as a relief sergeant in Facility

13  C.  Clavijo Decl. ¶ 4 (ECF No. 45-12 at 2).  Defendants Sandoval, Garcia, and Benefield worked

14  in Facility C during Second Watch, which runs from 6:00 am to 2:00 pm., with defendant

15  Sandoval working as a Facility C Yard Sergeant, and defendants Garcia and Benefield working as

16  Facility C8 housing unit floor officers.  Sandoval Decl., ¶ 2 (ECF No. 45-24 at 2); Garcia Decl. ¶ 2

17  (ECF No. 45-16 at 1-2); Benefield Decl. ¶¶ 1-2 (ECF No. 45-4 at 2).

18      **B.       Facility C8 Operations**

19         During the relevant time period, Plaintiff was housed in Facility C, in Building C8.

20  Facility C has its own law library, with its own assigned education officer.  Colvin Decl., ¶¶ 2-4

21  (Dkt. No. 45-13 at 2); Tomlinson Decl., ¶ 2 (ECF No. 45-39 at 1-2).  The law library has three

22  electric typewriters that inmates may use to prepare their legal documents, on a first-come first-

23  serve basis, and inmates provide their own typewriter ribbon.  Colvin Decl. ¶ 8 (ECF No. 45-13 at

24  4).  The law library has approximately eight computer kiosks that inmates may use to access case

25  law and court rules.  Kilgore Decl. ¶ 14 (ECF No. 86-1 at 3).  Inmate access to the law library is

26  governed by the Salinas Valley Operations Manual Supplement § 101120.  Admission to the law

27

28  _____

[1] The following facts are undisputed unless otherwise noted.

United States District Court
Northern District of California

1  library is normally by ducat,[2] and there is no automatic ducating.  ECF No. 45-50 at 5; Colvin

2  Decl., ¶¶ 3-5 (Dkt. No. 45-13 at 2-3); Tomlinson Decl., ¶¶ 2-4 (ECF No. 45-39 at 1-2).  Inmates

3  attending the law library have either General Legal User ("GLU") status or Priority Legal User

4  ("PLU") status.  Inmates are GLU status unless they apply for, and are granted, PLU status.  To

5  qualify for PLU status, inmates must have a pending court deadline within thirty days.  15 Cal.

6  Code Regs. § 3122.  PLU status inmates have priority in accessing the library, and the library tries

7  to grant PLU inmates twice-weekly access to the law library.  Colvin Decl., ¶ 3-5 (Dkt. No. 45-13

8  at 2-3); Tomlinson Decl., ¶¶ 2-4 (ECF No. 45-39 at 1-2).  Whenever possible, PLU inmates

9  receive four hours of library access per week, while GLU inmates may receive two hours of access

10  per week.  ECF No. 45-50 at 4 (OP 34 at 3).  GLU status severely limits an inmate's access to the

11  law library, and generally results in being unable to access the computer stations to conduct legal

12  research.  Inmates on PLU status visit the library at different times than inmates on GLU status, so

13  inmates on PLU status have better access to the computer kiosks.  Kilgore Decl. ¶ 12 (ECF No.

14  86-1 at 3).  In submitting a request for PLU status, an inmate is required to show the order and/or

15  rule establishing the court deadline.  An inmate is required to submit a request for PLU status even

16  if he has PLU authorization from another facility because PLU forms can potentially be forged.

17  Colvin Decl., ¶ 3-5 (Dkt. No. 45-13 at 2-3); Tomlinson Decl., ¶¶ 2-4 (ECF No. 45-39 at 1-2).

18         **C.**       **Provision of Indigent Supplies**

19        SVSP Operational Procedure No. 34 ("OP 34") provides that housing unit officers will

20  issue indigent supplies to inmates on the approved indigent list.  The allowable indigent supplies

21  include five envelopes, up to five pieces of white copy paper per week, and a golf pencil on

22  request.  During Second Watch and Third Watch, Facility C8 inmates could request indigent

23  supplies, such as paper and writing instruments, from any of the correctional officers staffing

24  Facility C2 yard and the Facility C program area.  Defendant Sandoval's understanding was that

25  paper and writing instruments were distributed during Third Watch, around when mail is

26

27  ---
   [2] A ducat is a written pass authorizing an inmate to move around the prison, such as to attend a

28  medical appointment or to access the law library.  *See, e.g., Brown v. Kyle*, No. 1:04-CV-06539-AWI, 2011 WL 3358967, at *13 n. 16 (E.D. Cal. Aug. 3, 2011).

distributed.  As a librarian and not a housing unit officer, defendant Colvin had no authority to issue indigent supplies in accordance with OP 34.  Defendant Benefield alleges that he had no authority to order paper or writing instruments, and that he merely distributed these items in accordance with his supervisor's directions.  Colvin Decl. ¶ 9 (ECF No. 45-13 at 5); Sandoval Decl. ¶ 4 and Ex. B (ECF No. 45-24 at 3; ECF No. 45-26); Garcia Decl. ¶ 3 and Ex. A (ECF No. 45-15 at 2-3; ECF No. 45-17); Benefield Decl. ¶ 2 and Ex. B (ECF No. 45-4 at 3; ECF No. 45-6).

Defendant Colvin states that the law library generally provides inmates with scratch paper to use for their legal research, and makes available writing instruments to inmates while they are at the law library.  Colvin Decl. ¶ 8 (ECF No. 45-13 at 4).  Plaintiff states that defendant Colvin informed him that he has an unwritten policy that paper and pen filler should not be readily available to inmates in the law library because another correctional officer refused to sufficiently fill the monthly request for paper.  Specifically, defendant Colvin had developed a policy allowing only scratch paper to be available in the library, and refusing to make available typing paper, 28-line court paper, and pens.  ECF No. 1-3 at 12; Kilgore Decl. ¶ 18 (ECF No. 86-1 at 3).

### D.   Events Relevant to Alleged Denial of Access to Courts, Retaliatory Actions, and Excessive Force

#### 1.   Plaintiff's Federal Courts Litigation[3]

_Kilgore v. Vigra, et al._, C No. 2:11-cv-01822-WBS-KJN (E.D. Cal.) and related Ninth Circuit case, _Kilgore v. Nappi, et al._, 9th Cir. C No. 14-15711.  On or about April 10, 2014, while housed at a different correctional institution than SVSP, Plaintiff appealed the dismissal of C No. 2:11-cv-01822-WBS-KJN, _Kilgore v. Vigra, et al._, to the Ninth Circuit.  C No. 2:11-cv-01822-WBS-KJN, _Kilgore v. Vigra, et al._ ("_Vigra_"), ECF No. 48 (E.D. Cal. Apr. 10, 2014).  The Ninth

---

[3] The Court takes judicial notice of the dockets and pleadings in _Kilgore v. Vigra, et al._, C No. 2:11-cv-01822-WBS-KJN (E.D. Cal.); _Kilgore v. Nappi, et al._, 9th Cir. C No. 14-15711; _Kilgore v. Kelly, et al._, C No. 2:07-cv-02485-TLN-KJN (E.D. Cal.); _Kilgore v. Kelly, et al._, 9th Cir. C No. 14-16023; and _Kilgore v. Director, et al._, C No. 2:11-cv-1745 TLN-KJN-P (E.D. Cal.) because they are court records or pleadings that have a direct relation to the matters at issue.  _See Rosales-Martinez v. Palmer_, 753 F.3d 890, 895 (9th Cir. 2014) ("It is well established that [federal courts] may take judicial notice of proceedings in other courts."); _U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc._, 971 F.2d 244, 248 (9th Cir. 1992) (federal courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.").

United States District Court
Northern District of California

Circuit assigned the appeal the case number 14-15711, and the appeal proceeded under the name *Kilgore v. Nappi, et al.* 9th Cir. C No. 14-15711, *Kilgore v. Nappi, et al.* ("*Nappi*"). On March 20, 2015, the Ninth Circuit affirmed the district court's dismissal of *Vigra*. *Nappi*, ECF No. 18 (9th Cir. Mar. 20, 2015). On or about April 3, 2015, Plaintiff filed a petition for rehearing en banc, which the Ninth Circuit denied on July 10, 2015. *Nappi*, ECF No. 20 (Apr. 3, 2015), ECF No. 21 (Jul. 10, 2015). On July 20, 2015, the Ninth Circuit issued the mandate and an amended mandate. *Nappi*, ECF Nos. 22, 23 (Jul. 20, 2015).[4]

> *Kilgore v. Kelly, et al.*, C No. 2:07-cv-02485-TLN-KJN (E.D. Cal.), and *Kilgore v. Kelly, et al.*, 9th Cir. C No. 14-16023. On or about May 22, 2014, while housed at a different correctional institution than SVSP, Plaintiff appealed the dismissal of C No. 2:07-cv-02485-TLN-KJN, *Kilgore v. Kelly, et al.*, to the Ninth Circuit. C No. 2:07-cv-02485-TLN-KJN, *Kilgore v. Kelly, et al.* ("*Kelly*"), ECF No. 160 (E.D. Cal. May 22, 2014). The Ninth Circuit assigned the appeal the case number 14-16023 ("*Kelly Appeal*"). On October 22, 2015, the Ninth Circuit affirmed the district court's dismissal of *Kelly*. *Kelly Appeal*, ECF No. 43 (9th Cir. Oct. 22, 2015). The Ninth Circuit issued the mandate on Nov. 16, 2015. *Kelly Appeal*, ECF No. 44 (9th Cir. Nov. 16, 2015).

> *Kilgore v. Director, et al.*, C No. 2:11-cv-1745 TLN-KJN-P (E.D. Cal.) ("*Director*"). When Plaintiff was transferred to SVSP in September 2015, he was litigating *Director*. On September 28, 2015, Plaintiff filed a notice of change of address in this action, reporting his move to SVSP. *Director*, Dkt. No. 48 (E.D. Cal. Sept. 28, 2015). On February 26, 2016, the magistrate judge to whom *Director* had been assigned issued an order denying Plaintiff's requests for appointment of counsel and recommending that the court deny Plaintiff's request for leave to file a second amended complaint. *Director*, Dkt. No. 50 (E.D. Cal. Feb. 26, 2016). On March 7, 2016, Plaintiff filed a 2-page letter requesting that the court reconsider its denial of his requests for appointment of counsel because SVSP refused to provide inmates with pen-filler and paper, and

---

[4] The difference between the original mandate and the amended mandate is that the amended mandate lists the costs taxed against the appellant, whereas the original mandate does not reference the costs. *Compare Nappi*, ECF No. 22 *with Nappi*, ECF No. 23.

United States District Court
Northern District of California

was denying him PLU status, and stating that he would be unable to file objections to the report and recommendations due to the inability to obtain indigent supplies and to obtain PLU status. *Director*, Dkt. No. 51 (E.D. Cal. Mar. 7, 2016).  On March 31, 2016, the *Director* court adopted the February 26, 2016 report and recommendations.  *Director*, Dkt. No. 53 (E.D. Cal. Mar. 31, 2016).

**2.     Plaintiff's Overall Access to the Law Library and Legal Mail from September 2015 to April 2016**

From October 1, 2015 to April 26, 2016, Plaintiff accessed the law library from 8:45 am to 11:30 am, approximately once a week.  Specifically, Plaintiff attended law library on the following dates:  October 1, 8, 13, 16, 23, 28, 29, 2015; November 2, 9, 16, 20, 2015; December 2, 9, 15, 21, 30, 2015; January 7, 13, 27, 2016; February 4, 16, 24, 2016; March 7, 8, 16, 22, 2016; and April 1, 7, 11, 12, 19, 22, 25, 26, 2016.  Colvin Decl. ¶ 7 (ECF No. 45-13 at 4); Tomlinson Decl. ¶ 8 and Ex. B (ECF No. 45-39 at 3 and ECF No. 45-31).

Between September 2015 to March 2016, Plaintiff mailed out approximately 24 pieces of legal mail.  Benavides Decl., Ex. A (ECF No. 45-2).  Between October 7, 2015 and February 29, 2016, Plaintiff received approximately 20 pieces of legal mail, Benavides Decl., Ex. B (ECF No. 45-3).  The legal mail sent out were sent to the courts and what appear to be law firms or lawyers. Plaintiff states that the pieces of legal mail that were sent to the courts consisted of change of address forms; proof of service forms; and documents either drafted on the library's "scratch paper," which consisted of paper discarded by staff and therefore unusable for court pleadings, or drafted on paper borrowed from other inmates.  In these court mailings, Plaintiff informed the courts that SVSP refused to provide him with pen-filler and paper to draft and file legal pleadings. Kilgore Decl., ¶¶ 19, 75, 76 (ECF No. 86-1 at 3-4, 10).

**3.     September 2015**

On September 22, 2015, Plaintiff was transferred from California State Prison – Sacramento ("CSP-Sacramento") to Salinas Valley State Prison ("SVSP").  ECF No. 1-3 at 10. Prior to his transfer, Plaintiff had been housed in CSP-Sacramento's Administrative Segregation Unit from June 22, 2015 until his transfer to SVSP, without access to his legal property.  ECF No.

86 at 4-5.  On September 8, 2015 the CSP-Sacramento law librarian had granted Plaintiff's request for Priority Legal User ("PLU") status for the September 10 to October 10, 2015 time period so that Plaintiff could prepare a petition for a writ of certiorari with the Supreme Court to seek review for the Ninth Circuit's affirmance in *Nappi*.  ECF No. 1 at 10; ECF No. 86 at 4-5l; ECF No. 86-2 at 6.

In the two weeks following his arrival at SVSP, Plaintiff twice requested from defendant Benefield a PLU status application and indigent writing supplies.  Defendant Benefield refused the requests and told Plaintiff, "We don't provide indigent inmates pen fillers or paper;" that he didn't "give a shit about Title 15" requirements to provide indigent writing supplies and access to the law library; and that Plaintiff should file a grievance if he did not like the way they ran things at SVSP.  ECF No. 1-3 at 10; ECF No. 86 at 5; Kilgore Decl. ¶¶ 1-5 (ECF No. 86-1 at 1-2).  Plaintiff was able to obtain a Library Paging form, a PLU status application, and an indigent supply request from another inmate.  ECF No. 1 at 10.

On September 24, 2015, Plaintiff sent out four pieces of legal mail, two to the Attorney General's Office, one to the Eastern District of California, and one to the Ninth Circuit Court of Appeals.  ECF NO. 45-2 at 2.

On September 29, 2015, Plaintiff obtained a second PLU status application from library tech C. Garcia at the Library Service Window.  ECF No. 1-3 at 11; Kilgore Decl. ¶ 7 (ECF No. 86-1 at 2).  C. Garcia denied Plaintiff's request for 28-line paper, paper, and a pen filler, stating that, per OP 34, library staff did not provide these items and that indigent inmates were to obtain lined paper and a golf pencil from housing unit staff.  ECF No. 1-3 at 11; Kilgore Decl. ¶ 7 (ECF No. 86-1 at 2).  Plaintiff returned to defendant Benefield and informed him that housing unit staff, i.e. Benefield, was responsible for distributing indigent supplies.  Defendant Benefield responded, "We don't provide indigent inmates pen fillers or paper" and told him to file a grievance.  ECF No. 1 at 11; ECF No. 1-3 at 11; Kilgore Decl. ¶¶ 8-9 (ECF No. 86-1 at 2).

On September 29, 2015, Plaintiff submitted an application for PLU status, stating that he had an October 20, 2015 deadline to file a petition for a writ of certiorari in the United States Supreme Court.  ECF No. 86-2 at 7.  The denial of this application is dated September 30, 2015

United States District Court
Northern District of California

and signed by S. Tomlinson, with the following statement: "Case in 9th Circuit was terminated on 3/30/15.  Judgment entered on that date."  ECF No. 86-2 at 7.

Plaintiff did not access the SVSP law library in September 2015.

### 4.    October 2015

In October 2015, Plaintiff accessed the law library on the following dates from 8:45 am to 11:30 a.m.: October 1, 8, 13, 16, 23, 28, and 29.  Colvin Decl. ¶ 7 (ECF No. 45-13 at 4); Tomlinson Decl. ¶ 8 and Ex. B (ECF No. 45-39 at 3 and ECF No. 45-31).

On October 1, 2015, library tech C. Garcia informed Plaintiff that defendant Colvin had denied his application for PLU status.  ECF No. 1-3 at 12; Kilgore Decl. ¶ 11 (ECF No. 86-1 at 2). Defendant Colvin denies any involvement in reviewing or denying this PLU status application. Colvin Decl. ¶¶ 5-6 and Ex. B (ECF No. 45-13 at 3-4; ECF No. 45-15.  According to prison records, law librarian Tomlinson reviewed this application on September 30, 2015, and denied it as follows:

> Case in 9th Circuit was terminated on 3/20/15.  Judgment entered on that date.  Timeframe for writ is 90 days after entry of judgment.

ECF No. 45-15 at 2.  Defendant Colvin states that, according to the records, defendant Tomlinson denied the application because *Nappi* was terminated in the Ninth Circuit on March 20, 2015, and Plaintiff had ninety days from that date to file a petition for a writ of certiorari with the Supreme Court.

Plaintiff submitted a second application for PLU status in order to prosecute *Nappi*.  This application was reviewed by law librarian Tomlinson and defendant Colvin, and denied as follows:

> This [application] is a duplicate of a PLU Application that was denied on 9/28/15. Paperwork submitted does not substantive PLU request.  Denied.

ECF No. 45-15 at 2.  Defendant Colvin states that the denial was also because Plaintiff had not provided the legal rule that compelled the deadline pursuant to which he requested PLU status, as required by Title 15.  Colvin Decl., ¶ 6 and Ex. A (ECF No. 45-13 at 4; ECF No. 45-15 at 2). Plaintiff alleges that he did provide a copy of the relevant legal rule, and that the denial of these

8

two applications for PLU status prevented him from filing petitions for a writ of certiorari in the United States Supreme Court to seek review of (1) the Ninth Circuit dismissal of *Nappi* and (2) the Ninth Circuit dismissal of *Kelly Appeal*.  ECF No. 1-3 at 12.

On October 12, 2015, Plaintiff sent out two pieces of legal mail, one to the California Court of Appeals, Division 5, and one to the CDCR Ombudsman.  ECF No. 45-2 at 2.

On October 15, 2015, defendant Benefield denied Plaintiff's request to access the law library to make photocopies of legal documents.

On October 21, 2015, Plaintiff filed Grievance No. SVSP 15-05194, which alleged that he had been denied access to the courts as follows: defendant Colvin incorrectly denied him PLU status, LTA Garcia had informed him that the law library does not provide any paper other than scratch paper and does not provide writing instruments, and defendant Benefield denied his request for copies of legal documents.  ECF No. 45-32 at 6-11.

On October 27, 2015, Plaintiff submitted a request for PLU status, stating that he had a court deadline on November 9, 2015.  ECF No. 86-2 at 11.

### 5.    November 2015

In November 2015, Plaintiff accessed the law library on the following dates from 8:45 am to 11:30 a.m.: November 2, 9, 16, and 20.  Colvin Decl. ¶ 7 (ECF No. 45-13 at 4); Tomlinson Decl. ¶ 8 and Ex. B (ECF No. 45-39 at 3 and ECF No. 45-31).  In November 2015, Plaintiff sent out four pieces of legal mail: one to the CDCR Ombudsman, one to the CDCR Office of Appeals, and two other pieces of legal mail.  ECF No. 45-2 at 2.

On November 2, 2015, Plaintiff's October 27, 2015 application for PLU status was approved by T. Lindquist through November 9, 2015 for *Kelly Appeal*.  ECF No. 45-15 at 2; ECF No. 45-32 at 14; ECF No. 86-2 at 11.

On November 4, 2015, Plaintiff filed Grievance No. SVSP L-15-05420, a group grievance alleging that SVSP unconstitutionally designated Facility C8 C-Section as administrative segregation ("Ad-Seg") overflow housing, which had resulted in housing Special Needs Yard ("SNY") inmates with General Population ("GP") inmates, the elimination of 30-minute door-check procedures and psych programs, and GP inmates being unconstitutionally reclassified and

United States District Court
Northern District of California

9

1    placed on the more restrictive Ad-Seg housing unit program.  ECF No. 45-31 at 5-9.

2          On November 16, 2015, defendant Benefield again denied Plaintiff's request for indigent

3    supplies, despite Plaintiff being approved for the supplies pursuant to OP 34.  ECF No. 1-3 at 12.

4          On November 24, 2015, during the first level interview regarding Grievance No. SVSP-L-

5    15-05194, defendant Colvin informed Plaintiff that he had an unwritten policy that paper and pen

6    filler should not be readily available to inmates in the law library because another correctional

7    officer refused to sufficiently fill the monthly request for paper.  Specifically, defendant Colvin

8    had developed a policy allowing only scratch paper to be available in the library, and refused to

9    make available typing paper, 28-line court paper, and pens.  ECF No. 1-3 at 12; Kilgore Decl. ¶ 18

10   (ECF No. 86-1 at 3).  In response to Plaintiff's request for indigent writing supplies, defendant

11   Colvin directed Plaintiff to OP 34.  Plaintiff informed defendant Colvin that defendant Benefield

12   refused to distribute indigent supplies to him as required by OP 34.  Defendant Colvin said that he

13   would speak to defendant Benefield.  Defendant Colvin was subsequently unassigned from

14   reviewing Grievance No. SVSP-L-15-05194 and replaced by SVSP Vice Principal L. Farmer.

15   ECF No. 1-3 at 12.  Defendant Colvin denies having an unwritten policy to not stock the library

16   with paper, pen-filler, and envelopes, and denies telling Plaintiff that an SVSP employee refused

17   to sufficiently fill defendant Colvin's monthly orders for paper.  Colvin Decl. ¶ 9 (ECF No. 45-13

18   at 5.)

19          During the interviews conducted on November 24 and 30, 2015 regarding Grievance No.

20   SVSP-L-15-05194, Plaintiff informed Vice Principal Farmer and defendant Colvin that he was

21   unable to prepare court pleadings in *Nappi*, *Kelly Appeal*, and *Director* because either the scratch

22   bin was depleted or the scratch paper provided by the library consisted of documents discarded by

23   staff and were therefore unable to be used for court pleadings.[5]  Kilgore Decl., ¶ 19 (ECF No. 86-1

24   at 3-4).

25          On November 30, 2015, defendant Benefield summoned Plaintiff to the Facility C8

26   Housing Unit office and stated that because Plaintiff had filed Grievance Nos. SVSP-L-15-05194

27

28   _____
     [5] In November 2015, no pleadings were due in *Director*.  *See generally Director.*

United States District Court
Northern District of California

and SVSP-L-15-5420, Plaintiff was not to "ask him for shit while housed in [defendant Benefield's] building," which Plaintiff understood as instructing him to not ask for legal forms, paper, pen-fillers, or access to the Library Service Window.  Defendant Benefield stated that he would continue to harass Plaintiff and hinder Plaintiff's access to the law library.  ECF No. 1-3 at 13-14; Kilgore Decl. ¶¶ 20-21 (ECF No. 86-1 at 4).

### 6.    December 2015

In December 2015, Plaintiff accessed the law library on the following dates from 8:45 am to 11:30 a.m.: December 2, 9, 15, 21, and 30, Colvin Decl. ¶ 7 (ECF No. 45-13 at 4); Tomlinson Decl. ¶ 8 and Ex. B (ECF No. 45-39 at 3 and ECF No. 45-31), and sent out two pieces of legal mail, one of which was sent to the CDCR Ombudsman on December 10, 2015.  ECF No. 45-2 at 2.

On December 1, 2015, during the first level interview regarding Grievance No. SVSP-L-15-05420, defendants Benefield and Clavijo informed Plaintiff that they would restrict the phone privileges of inmates who signed this group grievance.  ECF No. 9 at 14.

On December 8, 2015, during the second level interview regarding Grievance No. SVSP-L-15-05194, defendant Benefield stated in the presence of Vice Principal Farmer that he would not adhere by OP 34 and that correctional officer Mojica had not provided him with a list of inmates who had been approved to receive indigent supplies.  ECF No. 1-3 at 14.

The following events took place on December 9, 2015.  Defendant Clavijo interviewed inmates Brown and Clemente in connection with the processing of Grievance No. SVSP-L-15-05420, with defendant Benefield present.  Clavijo Decl. ¶ 5 (ECF No. 45-12 at 2); Browne Decl. ¶¶ 1, 3 (ECF No. 86-2 at 64).  Defendant Benefield told inmate Browne: "Since Kilgore is complaining so much and you guys signed his 602, I'll make sure you only receive a once a month phone per your A2B status."  Browne Decl. I, at ¶ 3 (ECF No. 86-2 at 64).  Inmate Browne informed Plaintiff of defendant Benefield's threat, but did not identify the sergeant as defendant Clavijo.  Kilgore Decl. ¶¶ 24, 26, 30 (ECF No. 86-1 at 4-5).  Immediately after speaking with inmate Browne, Plaintiff prepared and placed in the mail a letter to the CDCR's Ombudsman Office, stating that OP 34 is unconstitutional and reporting defendant Benefield's retaliatory acts.

11

1   Prison policy is that outgoing mail is processed by the mailroom or mailed out the day after it has

2   been submitted to correctional officials for mailing.  ECF No. 1-3 at 15; Kilgore Decl. ¶¶ 28, 29

3   (ECF No. 96-1 at 5); ECF No. 86-2 at 85-86.  Plaintiff later realized that the sergeant that Inmate

4   Browne was referring to was defendant Clavijo.  Kilgore Decl. ¶ 30; ECF No. 86-1 at 5.

5          On December 10, 2015, defendant Benefield informed Plaintiff that he was aware of the

6   letter that Plaintiff had mailed to the Ombudsman Office the day prior, and then proceeded to

7   search and trash Plaintiff's cell.  Defendant Benefield threw Plaintiff's legal documents, property,

8   and bed linens on the floor, and broke Plaintiff's TV stand.  ECF No. 1-3 at 15; Kilgore Decl. ¶ 32

9   (ECF No. 86-1 at 5).  Inmate Browne viewed Plaintiff's cell after the search and described the cell

10  as in disarray, with Plaintiff's personal property and legal documents scattered about the cell and

11  dumped on the floor and bunks.  Browne Decl. I, at ¶ 4 (ECF No. 86-2 at 64).

12         On December 14, 2015, Plaintiff asked another inmate to inform library staff Lindquist

13  that Plaintiff needed to access the Library Service Window.  Library staff Lindquist granted this

14  request, but defendant Benefield refused to release Plaintiff from the housing unit and instead

15  searched and trashed both Plaintiff's cell and inmate Browne's cell.  Kilgore Decl. ¶ 33 (ECF No.

16  86-1 at 6); Browne Decl. I, at ¶ 6 (ECF No. 86-2 at 65).

17         On December 15, 2015, Plaintiff filed Grievance No. SVSP L-15-06122, alleging that

18  defendant Benefield threatened him on November 30, 2015; denied him indigent supplies; and

19  trashed his cell during cell searches on December 10 and 14, 2015.  ECF No. 1-3 at 15; ECF No.

20  45-30 at 4-7.

21                        **7.      January 2016**

22         In January 2016, Plaintiff accessed the law library on the following dates from 8:45 am to

23  11:30 a.m.: January 7, 13, and 27, Colvin Decl. ¶ 7 (ECF No. 45-13 at 4); Tomlinson Decl. ¶ 8 and

24  Ex. B (ECF No. 45-39 at 3 and ECF No. 45-31), and sent out six pieces of legal mail: three of

25  these pieces of legal mail were sent to the CDCR Office of Appeals, and one piece of legal mail

26  was sent to the California Attorney General's Office.  ECF No. 45-2 at 2.

27         On January 9, 2016, Grievance No. SVSP 15-05194 (1509041) was granted in part in that

28  Chief Deputy Warden Solis ordered SVSP staff to provide Plaintiff with paper and pen-filler.

United States District Court
Northern District of California

Despite this order, defendant Benefield refused to provide Plaintiff with paper and pen-filler. Plaintiff alleges that the denial of these indigent supplies rendered him unable to file a petition for writ of certiorari in *Nappi*, a petition for review in *Kelly Appeal*, and objections to findings and recommendations in *Director*.[6] Kilgore Decl. ¶¶ 34, 35 (ECF No. 86-1 at 5).

### 8. February 2016

In February 2016, Plaintiff accessed the law library on the following dates from 8:45 am to 11:30 a.m.: February 4, 16, and 24.  Colvin Decl. ¶ 7 (ECF No. 45-13 at 4); Tomlinson Decl. ¶ 8 and Ex. B (ECF No. 45-39 at 3 and ECF No. 45-31), and sent out four pieces of legal mail: one of which was sent to the CDCR Office of Appeals, and one of which was sent to the California Attorney General's Office.  ECF No. 45-2 at 2.

On February 23, 2016, Plaintiff was issued envelopes, but not paper or pen-filler.  Plaintiff alleges that the failure to issue him paper and pen filler rendered him unable to file objections to the report and recommendation issued on February 26, 2016, in *Kilgore v. Director, et al.*, C No. 2:11-cv-1745 TLN-KJN-P (E.D. Cal.) ("*Director*").  ECF No. 1-3 at 16.

On February 26, 2016, the *Director* court issued an "Order and Findings and Recommendations," recommending denial of Plaintiff's requests for appointment of counsel, and recommending denial of Plaintiff's motion for leave to file a second amended complaint, finding that Plaintiff had unduly delayed in seeking leave to amend as he had waited over two years to seek the proposed amendments.  *See Director*, ECF No. 50 (E.D. Cal. Feb. 26, 2016).

### 9. March 2016

In March 2016, Plaintiff accessed the law library on the following dates from 8:45 am to 11:30 a.m.: March 7, 8, 16, and 22, Colvin Decl. ¶ 7 (ECF No. 45-13 at 4); Tomlinson Decl. ¶ 8 and Ex. B (ECF No. 45-39 at 3 and ECF No. 45-31), and sent out four pieces of legal mail: one to the CDCR Ombudsman, one to the CDCR Office of Appeals, and two other pieces of legal mail.  ECF No. 45-2 at 2.

---

[6] As of January 9, 2016, the deadline to file a petition for a writ of certiorari in *Nappi* and in *Kelly Appeal* had expired, and the report and recommendation in *Director* had not yet issued.

1        From March 1 to 3, 2016, defendant Garcia denied Plaintiff's requests to access the

2    Library Service Window.  ECF No. 1-3 at 16; Kilgore Decl. ¶ 39 (ECF No. 86-1 at 6).

3        On March 3, 2016, Plaintiff again asked defendant Garcia to access the library.  Defendant

4    Benefield overhead and stated, "Why did you ask Garcia to access the library?  I told you not to

5    ask for shit while in my housing unit.  You are not going to be released for the yard today."  The

6    tower officer initially refused to release Plaintiff to yard.  Plaintiff was ultimately released for yard

7    thirty minutes later, thereby rendering him unable to access the library because library access is

8    first-come, first served, and the library was already at capacity with inmates who had been timely

9    released for yard.  ECF No. 1-3 at 17; Kilgore Decl. ¶¶ 37-38, 40-41 (ECF No. 86-1 at 6-7);

10   Browne Decl. II, at ¶¶ 1-4 (ECF No. 86-2 at 66).

11        That same day, defendants Garcia and Benefield searched Plaintiff's cell.  The parties'

12   account of this cell search differ.

13        Plaintiff alleges as follows:  While Plaintiff was at exercise yard, defendants Garcia and

14   Benefield trashed Plaintiff's cell.  They dumped Plaintiff's personal property and legal paperwork

15   and files on the floor and across his bunk, and threw Plaintiff's family photo album and pictures

16   on the floor.  Inmate Gordon observed defendants Garcia and Benefield enter Plaintiff's cell and

17   could hear Plaintiff's property being flung across the cell and hitting the floor.  When Plaintiff

18   returned from yard, defendant Benefield handed him a cell search slip and inmate Gordon

19   informed Plaintiff that his cell had been searched.  After observing the condition of his cell,

20   Plaintiff asked inmates Cooper and Browne to observe the condition of his cell.  Inmates Browne

21   and Cooper noted that the cell was in disarray and that Plaintiff's personal property had been

22   thrown about the cell.  Plaintiff asked defendants Benefield and Garcia to pick the items up off the

23   floor.  Defendants Garcia and Benefield refused.  Plaintiff then requested that defendant Garcia

24   place him in a holding cell to preserve the integrity of any investigation into defendants Garcia and

25   Benefield's misconduct, and requested that defendant Garcia call a sergeant to witness the

26   condition of Plaintiff's cell.  Defendant Garcia refused.  Plaintiff insisted again that he be placed in

27   a holding cell, and that a sergeant be called.  Defendant Garcia agreed and placed Plaintiff in

28   handcuffs.  As Plaintiff took a step in the direction of the holding cell, defendant Garcia yelled,

United States District Court
Northern District of California

"You're going in your cell," and violently jerked on the handcuffs, in an attempt to pull Plaintiff in the direction of his cell. This threw Plaintiff off balance, and defendant Garcia forced Plaintiff to the ground, injuring Plaintiff's left knee and causing Plaintiff a great deal of pain. Inmate Cooper intervened to stop defendant Garcia from further hurting Plaintiff, and asked defendants Benefield and Garcia why they would not take Plaintiff to a holding cell. At no point did Plaintiff resist or do anything that warranted use of force. Defendant Benefield witnessed these events and did nothing to intervene. Inmate Cooper helped Plaintiff off the floor and to the holding cell. After Plaintiff was placed in the holding cage, defendants Garcia and Benefield threatened to falsely write Plaintiff up for a disciplinary violation if he did not withdraw his request to have a sergeant investigate their misconduct. Plaintiff refused to withdraw his request and defendant Sandoval was summoned. When defendant Sandoval arrived, Plaintiff informed him that defendants Garcia and Benefield had searched and trashed his cell after he requested to access the law library; that defendants Garcia and Benefield then attempted to drag him into his cell and injured him; and that defendant Benefield had previously threatened him for filing grievances and told Plaintiff not to ask for shit while in defendant Benefield's housing unit. Defendant Sandoval inspected Plaintiff's cell and said "This is too much. This ain't cool." Defendant Benefield said that Plaintiff did "all that," implying that Plaintiff had created the disarray. Inmate Gordon told defendant Sandoval that Plaintiff did not create the disarray and that Plaintiff never entered his cell after it was searched. Defendants Garcia and Benefield picked the photo album and pictures off the floor. ECF No. 1-3 at 16-18; Kilgore Decl. ¶¶ 41-60, 64, 66-68 (ECF No. 86-1 at 7-9); Browne Decl. II, at ¶¶ 5-13 (ECF No. 86-2 at 66-67); Cooper Decl. ¶¶ 2-5 (ECF No. 86-2 at 68).

Defendants allege as follows: Defendants Garcia and Benefield searched Plaintiff's cell on March 3, 2016 as part of their regular duties, which required them to conduct three cell searches daily, and not because Plaintiff had requested access to the law library on March 2 and 3, 2016, or because Plaintiff had filed grievances. Garcia Decl. ¶¶ 5-6 (ECF No. 45-16 at 4); Benefield Decl. ¶¶ 8, 9 (ECF No. 45-4 at 5-6). Plaintiff had a large amount of paperwork, and defendants Benefield and Garcia searched the paperwork for contraband. Defendants Benefield and Garcia ensured that the paperwork was left in the same order as when it was found; did not mishandle or

15

throw about the paperwork was; did not throw any items to the floor; did not place the photo album on the floor or remove photographs from the album; and did not trash the cell. Defendants Benefield and Garcia stacked some paper on the bed. Defendants Benefield and Garcia noticed that a photo album had fallen on the floor after the search and some photographs had fallen out of the album. Defendants Benefield and Garcia confiscated six large plastic bags and four pairs of plastic gloves. Garcia Decl. ¶¶ 5, 7, 8 (ECF No. 45-16 at 4-5); Benefield Decl. ¶¶ 10-11 (ECF No. 45-4 at 6-7). When Plaintiff returned to his cell from the morning-yard session and looked inside his cell, he became irate and started to yell, telling other inmates that his cell had been trashed and that photographs had been thrown to the ground. Plaintiff refused to enter his cell and yelled, "You fucked up my cell" and "get a sergeant." When Plaintiff refused defendant Garcia's requests to return to his cell, defendant Garcia placed Plaintiff in handcuffs with the intention of escorting him to a nearby holding cell to prevent from him inciting other inmates to be disruptive. Plaintiff refused to walk to the holding cell and spontaneously dropped down to the floor, sat down on his buttocks, and refused to move. After a few minutes passed, another inmate convinced Plaintiff to stand up and walk to the holding cell. Garcia Decl. ¶ 8 (ECF No. 45-16 at 5); Benefield Decl. ¶ 12 (ECF No. 45-4 at 7-8). Per Plaintiff's request, defendant Sandoval inspected Plaintiff's cell. Defendant Sandoval noted that the cell looked as if it had been searched, in that the clothing had been removed from the shelves and placed on the bed and items appeared to have been moved, but that the cell did not appear trashed or particularly disorderly. Defendant Sandoval noticed a photo album on the floor but opined that it had fallen after the search because defendants Benefield and Garcia denied putting the album on the floor and because only two or three photographs were fanned out from a normal position, indicating that the album had likely fallen off a shelf or table, rather than tossed to the floor. Defendant Benefield picked up the photo album and photographs and placed them on the shelf. Defendant Sandoval returned to the holding cell and told Plaintiff that his cell had not been trashed. Plaintiff returned to his cell. Garcia Decl. ¶ 8 (ECF No. 45-16 at 5); Sandoval Decl., ¶¶ 6-7 (ECF No. 45-24 at 4); Benefield Decl. ¶ 12 (ECF No. 45-4 at 7-8).

The subsequent events regarding treatment, or lack thereof, for Plaintiff's right knee are discussed in Section I.E.

1        On or about March 7, 2016, Plaintiff filed a pleading in *Director*, requesting that the

2    *Director* court reconsider its denial of his requests for appointment of counsel because the

3    following conditions at SVSP rendered him unable to file objections to the February 26, 2016

4    Report and Recommendations, or file a summary judgment motion, or file an opposition to any

5    summary judgment motion filed by the defendants: he had been subject to a retaliatory transfer to

6    SVSP, a more restrictive prison; he was indigent; SVSP officials did not provide indigent inmates

7    with paper or pen-filler due to a lack of resources; and library staff refused to provide him with

8    paper and pen-filler and to schedule him for PLU status. *Director*, ECF No. 51 (Mar. 7, 2016).

9        On March 8, 2016, Plaintiff filed an emergency grievance/staff complaint, Grievance No.

10    SVSP L-16-01458, against defendants Garcia and Benefield, regarding their actions on March 3,

11    2016. ECF No. 45-33 at 4-7. At the time that Plaintiff filed this grievance, Plaintiff was unaware

12    of the identity of defendant Sandoval, and therefore described him by his rank as a sergeant. ECF

13    No. 45-33 at 4-7; Kilgore Decl. ¶ 73 (ECF No. 86-1 at 10).

14              **10.    April 2016**

15        In April 2016, Plaintiff accessed the law library on the following dates from 8:45 am to

16    11:30 a.m.: April 7, 11, 12, 19, 22, 25, and 26. Colvin Decl. ¶ 7 (ECF No. 45-13 at 4); Tomlinson

17    Decl. ¶ 8 and Ex. B (ECF No. 45-39 at 3 and ECF No. 45-31).

18           **E.    Events Relevant to Alleged Deliberate Indifference to Serious Medical Needs**

19        In mid-2015, Plaintiff injured his knee while jogging. On June 15, 2015, an MRI was done

20    of Plaintiff's left knee, which showed a small radial tear of the posterior meniscus, leading to a

21    diagnosis of acute medial meniscus tear in the right knee and chondromalacia of medial condyle of

22    the left femur. A general physical examination indicated that the left knee was stable, and Plaintiff

23    denied experiencing pain in the prior three months but stated that the injury required him to curtail

24    his exercise. No specific treatment was recommended other than 800 mg Motrin prior to working

25    out. Bright Decl., Ex. B at AGO-MED 026 (ECF No. 45-11 at 28).

26        Throughout 2015, prison doctors followed up regularly with Plaintiff regarding his left

27    knee. Plaintiff was sent to orthopedics for evaluation; referred to physical therapy; given a shoe

28    insert to help with the left knee; advised to avoid high-impact activities; and prescribed naproxen

United States District Court
Northern District of California

United States District Court
Northern District of California

1   to address the pain.  Bright Decl., Ex. B at AGO-MED 008-030 (ECF No. 45-11 at 10-32).  On

2   November 16, 2015, Plaintiff was diagnosed as having chondromalacia patella of the left knee.

3   Bright Decl., Ex. B at AGO-MED 018-19 (ECF No. 45-11 at 20-21).  Chondromalacia patella is

4   an inflammation of the underside of the patella and softening of the cartridge.  Chondromalacia

5   patella occurs when the kneecap rubs against the edge of the patella groove rather than gliding

6   smoothly in the middle of the groove, causing small tears in the cartilage which can get inflamed

7   and cause pain.  Causes of chondromalacia patella include overuse; activities that involve running,

8   jumping, or rapid change of direction because they are particularly stressful to the knee joint;

9   being overweight; pronation or inefficient foot mechanics; and insufficient warmup before

10  exercises.  Bright Decl. ¶ 7 (ECF No. 45-9 at 3-4).

11        Naproxen is a medically appropriate medication to treat mild pain or swelling resulting

12  from Plaintiff's left-knee condition.  Bright Decl. ¶ 8 (ECF No. 45-9 at 4).  From October 9, 2015

13  to October 8, 2016, Plaintiff had a "keep on person" prescription for naproxen, a nonsteroidal anti-

14  inflammatory drug.  Bright Decl. ¶ 8 (ECF No. 45-9 at 4).

15        On November 25, 2015, Plaintiff began physical therapy to treat his right knee.  Bright

16  Decl., Ex. B at AGO-MED 014 (ECF No. 45-11 at 16).

17        On March 3, 2016, Plaintiff's knee was injured when defendant Garcia jerked him to the

18  floor.  When defendants Sandoval, Garcia, and Benefield returned from inspecting his cell,

19  Plaintiff requested to see a nurse to treat and examine his knee, but they refused so that they could

20  cover up their misconduct with respect to the March 3, 2016 cell search.  Kilgore Decl. ¶¶ 69-70.

21  Defendants deny Plaintiff's allegation that his knee was injured by defendant Garcia, stating that

22  Plaintiff's knee injury was the result of his pre-existing chondromalacia patella.  Defendants also

23  deny refusing Plaintiff medical attention on March 3, 2016.  Defendants Sandoval, Garcia, and

24  Benefield state that, on that day, Plaintiff did not request that defendants Benefield, Garcia, and

25  Sandoval summon medical services; Plaintiff did not complain of pain to his knee or any other

26  part of his body; they did not observe Plaintiff have any sign of medical stress, or any difficulty

27  breathing, walking, or talking; and they were unaware that Plaintiff had submitted a CDCR Form

28  7362 on March 3, 2016, or had otherwise requested medical attention.  Garcia Decl. ¶¶ 9, 10 (ECF

No. 45-16 at 5-6); Sandoval Decl., ¶¶ 8-10 (ECF No. 45-24 at 4-5); Benefield Decl. ¶¶ 13-14 (ECF No. 45-4 at 8).

That same day, Plaintiff submitted a Form 7362 requesting medical attention for his knee, stating that it had been injured when he was handcuffed and forced to the ground by defendant Garcia.  Bright Decl. ¶ 9 and Ex. B at AGO-MED 005, 007 (ECF No. 45-9 at 4; ECF No. 45-11 at 7, 9).  The response time to a Form 7362 depends on the urgency of the request, but is not to exceed 72 hours from the time the request is made.  Plaintiff did not receive medical attention for his knee in response to this Form 7362 until seven days later, on March 10, 2016, after he had submitted a second Form 7362 on March 10, 2016.  Allen Decl. ¶¶ 68-71 (ECF No. 86-3 at 108).

Prison policy requires that all use of force subjects be examined by medical staff as soon as is practicable after the use of force, and that a CDCR Form 7219, Medical Report of Injury or Unusual Occurrence, be prepared pursuant to the examination.  In Plaintiff's case, the Form 7219 and related medical examination did not take place until March 10, 2016, a week later.  Allen Decl., ¶¶ 43-47, 56, 59-61 (ECF No. 86-3 at 106-108)

On March 7, 2016, Plaintiff had his prescheduled physical therapy appointment.  Plaintiff informed the physical therapist that he had fallen on his knee.  The physical therapist noted that Plaintiff had mild swelling in his left knee, but also had full extension and flexion capabilities of the left knee.  The physical therapist discussed with Plaintiff swelling management, stretches, and progressive strengthening.  Bright Decl. ¶ 10 and Ex. B at AGO-MED 006 (ECF No. 45-9 at 5; ECF No. 45-11 at 8).

On March 10, 2016, Plaintiff followed up on his March 3, 2016 Form 7362, by submitting another Form 7362 requesting medical attention for his knee.  Bright Decl., Ex. B at AGO-MED 005 (ECF No. 45-11 at 7).  That same day, a Form 7362 Medical Report of Injury or Unusual Occurrence was filled out for the March 3, 2016 injury, and recorded that Plaintiff reported suffering injury to his left knee due to being forced to the ground.  ECF No. 86-2 at 17.

On March 14, 2016, Plaintiff had another prescheduled physical therapy appointment. Plaintiff informed the physical therapist that his left knee hurt more lately and was swollen all day, and that he had completely stopped exercising as a result.  The physical therapist examined

United States District Court
Northern District of California

19

1    Plaintiff and noted that his left-knee extension and flexion was within normal limits and that

2    Plaintiff ambulated without deficit.  Bright Decl. ¶ 10 and Ex. B at AGO-MED 001 (ECF No. 45-9

3    at 5; ECF No. 45-11 at 3.).  That same day, Plaintiff was seen in response to his March 3 and 10

4    Form 7362s by Dr. Law San Fu, who prescribed a seven-day lay-in, as recommended by the

5    physical therapist.  Dr. Fu recommended naproxen as appropriate medication and scheduled a

6    follow-up appointment for May 5, 2016.  Bright Decl. ¶ 10 and Ex. B at AGO-MED 002-004

7    (ECF No. 45-9 at 5; ECF No. 45-11 at 4-6).

8         F.    **CDCR Administrative Grievance Process and Plaintiff's Grievances**

9               1.    **CDCR Administrative Grievance Process**

10        During the relevant time period, the California Department of Corrections and

11   Rehabilitation ("CDCR") provided inmates with the administrative grievance process set forth in

12   the version of 15 Cal. Code §§ 3084-3086 in effect at that time.[7]  This grievance process applied

13   to both custody issues and healthcare issues.  The CDCR provided its inmates the right to appeal

14   administratively "any policy, decision, action, condition, or omission by the department or its staff

15   that the inmate or parolee can demonstrate as having a material adverse effect upon his or her

16   health, safety, or welfare."  15 Cal. Code Regs. § 3084.1(a) (2016).

17        The grievance process required a prisoner to use a CDCR Form 602 "to describe the

18   specific issue under appeal and the relief requested" by stating all facts known and available

19   regarding the issue, and by listing all staff member(s) involved and describing their involvement in

20   the issue.  15 Cal. Code Regs. § 3084.2(a) (2016).  A grievance was formally reviewed at three

21   levels: (1) a first formal level filed with one of the institution's appeal coordinators, (2) a second

22   formal level filed with the institution head or designee, and (3) a third formal level filed with the

23   CDCR director or designee.  15 Cal. Code Regs. § 3084.7 (2016); Spaich Decl. ¶ 2 (ECF No. 45-

24

25   _____
     [7] The administrative grievance process has undergone restructuring since 2014.  Starting
26   September 1, 2017, 15 Cal. Code § 3087 was amended to create a separate system for addressing
     healthcare grievances.  15 Cal. Code § 3087.1 *et seq.* (2017).  Pursuant to this system, healthcare
27   grievances were grieved using the CDCR Form 602 HC and were subject to only two levels of
     review: an institutional level of review and a headquarters level of review, with the headquarters
28   level of review exhausting administrative remedies.  15 Cal. Code § 3087.1(a)(1), (g).  In 2020,
     there was a significant overall restructuring of the entire grievance process.

28 at 1-2). Pursuing a grievance through the third and final level satisfied the exhaustion requirement set forth in 42 U.S.C. § 1997e(a). 15 Cal. Code Regs. § 3084.1(b) (2016). First and second-level review of grievances were handled by staff located at the respective institutions. Spaich Decl. ¶ 3 (ECF No. 45-28 at 2). The Office of Appeals, located in Sacramento, California, handled the third-level review of non-health-care grievances as follows: Upon receipt by the Office of Appeals, the grievance was logged into the Inmate Appeals Tracking System ("IATS") computer database, which tracked all grievances accepted and adjudicated at the third level, as well as grievances that were received and rejected. The IATS included the following information for accepted grievances: the third-level log number for the grievance, the grievance's category (nature/subject), the institutional log number assigned at the first and second levels of review, the inmate's name and CDCR number, the institution where the grievance arose, the date that the grievance was accepted and decided, and the final disposition of the grievance. For rejected grievances, the IATS included similar information, along with the reason for rejection. Spaich Decl. ¶¶ 3, 4 (ECF No. 45-28 at 2-3). Since August 1, 2008, the Inmate Correspondence and Appeals Branch handled third level reviews of healthcare grievances. Spaich Decl. ¶ 3 (ECF No. 45-28 at 2).

### 2. Plaintiff's Grievances Received for Third Level Review

Between September 2015 and August 2017, the Office of Appeals received nine inmate grievances from Plaintiff for third-level review. Spaich Decl. ¶ 6 and Ex. A (ECF No. 45-28 at 3; ECF No. 45-29.)

Grievance No. SVSP 15-06122 (1508280) was accepted at the third level on January 22, 2016. As discussed above, this grievance alleged that defendant Benefield threatened Plaintif on November 30, 2015; denied him indigent supplies; and trashed his cell during cell searches on December 10 and 14, 2015. This grievance was denied at the third level on March 23, 2016. Spaich Decl., ¶¶ 6-7 and Ex. B (ECF No. 45-28 at 3; ECF No. 45-30.)

Grievance No. SVSP 15-05420 (1508769) was accepted at the third level on February 2, 2016 and grieved the October 14, 2015 designation of Facility C8 as an Administrative Segregation Unit overflow housing unit. This grievance was denied at the third level on March

United States District Court
Northern District of California

24, 2016.  Spaich Decl., ¶¶ 6, 8 and Ex. C (ECF No. 45-28 at 3; ECF No. 45-31.)

Grievance No. SVSP 15-05194 (1509041) was accepted at the third level on May 23, 2016.  As discussed above, this grievance alleged that Plaintiff had been denied access to the courts as follows:  defendant Colvin incorrectly denied him PLU status, the law library does not provide any paper other than scratch paper and does not provide writing instruments, and defendant Benefield denied his request for copies of legal documents.  This grievance was denied at the third level on August 2, 2016.  Spaich Decl., ¶¶ 6, 9 and Ex. D (ECF No. 45-28 at 3; ECF No. 45-32.)

Grievance No. SVSP 16-01458 (1511618) was submitted at the first level on March 3, 2016, and accepted at the third level on July 28, 2016.  This grievance alleged that on March 3, 2016, defendants Garcia and Benefield retaliated against Plaintiff by searching his cell and threatening him, and that defendant Garcia used excessive force and injured Plaintiff's knee.  This grievance was denied at the third level on September 29, 2016.  Spaich Decl., ¶¶ 6, 10 and Ex. E (ECF No. 45-28 at 3; ECF No. 45-33.)

Grievance No. SVSP 16-01135 (1512868) was accepted at the third level on October 25, 2016, and alleged that the mailroom improperly confiscated Plaintiff's ink pens.  This grievance was denied at the third level on December 12, 2016.  Spaich Decl., ¶¶ 6, 11 and Ex. F (ECF No. 45-28 at 3; ECF No. 45-34.)

Grievance No. SVSP 16-02617 (1600275) was accepted at the third level on August 3, 2016, and grieved the lack of a barber program in Plaintiff's housing unit.  This grievance was denied at the third level on September 26, 2016.  Spaich Decl., ¶¶ 6, 12 and Ex. G (ECF No. 45-28 at 3; ECF No. 45-35)

Grievance No. SVSP 16-03705 (1601211) was accepted at the third level on December 7, 2016, and alleged that Plaintiff was improperly issued Rules Violation Report No. 1687.  This grievance was granted in part at the third level on February 6, 2017.  Spaich Decl., ¶¶ 6, 13 and Ex. H (ECF No. 45-28 at 3; ECF No. 45-36.)

Grievance No. SVSP 16-07437 (1702574) was accepted at the third level on March 27, 2017, and alleged that Plaintiff had been improperly denied law library access in December 2016.

1    This grievance was denied at the third level on June 2, 2017.  Spaich Decl., ¶¶ 6, 14 and Ex. I

2    (ECF No. 45-28 at 3; ECF No. 45-37.)

3          Grievance No. SVSP 17-02001 (1704610) was accepted at the third level on May 19,

4    2017, and grieved Plaintiff's program placement from "A-1/A to A-2/B" status.  This grievance

5    was denied at the third level on July 20, 2017.  Spaich Decl., ¶¶ 6, 15 and Ex. J (ECF No. 45-28 at

6    3; ECF No. 45-38.)

7          **G.      Plaintiff's Claims with the Government Claims Program**

8          Since 2015, Plaintiff has filed two claims with the Victims Compensation and Government

9    Claims Board ("VCGCB").

10         On August 12, 2015, Plaintiff submitted a claim to the VCGCB alleging that he had

11   suffered injuries due to lack of ready access to Naproxen to address pain from a knee injury in

12   March 2015; that defendant Joachim engaged in racial discrimination when he confiscated BLM-

13   positive images from inmates in April 18-22, 2015 and when he cancelled a grievance challenging

14   the confiscation; and that prison officials had retaliated against Plaintiff by refusing to fund his

15   proposed creative writing class despite the class being approved and funds earmarked for the class,

16   by confiscating his computer in January 2015, by removing him from the Inmate Advisory

17   Counsel, by charging him with a false disciplinary report, and by transferring him to C Facility

18   (from B facility) despite known staff/enemy concerns, which resulted in him ultimately being

19   housed in Ad-Seg.  ECF No. 45-22 at 19-44.  This claim was postmarked August 21, 2015 and

20   received August 24, 2015. The VCGCB denied this claim on September. 14, 2015, because it was

21   presented more than six months after the accrual of the cause of the action.  ECF No. 45-22 at 18.

22         On May 17, 2018, Plaintiff submitted a claim to the VCGCB regarding injuries suffered

23   from a March 2, 2018 incident when (1) correctional officers deployed tear gas which caused

24   injury to Plaintiff and other inmates, in the form of burning flesh and burning eyes, and

25   (2) defendant Clavijo denied Plaintiff's request for protective hazmat clothing to wear while

26   cleaning up the chemical agent, exacerbating and prolonging Plaintiff's injuries from exposure to

27   the tear gas.  ECF No. 45-22 at 6-17.  The claim was received by the VCGCB on July 27, 2018,

28   and rejected on August 2, 2018, because it involved complex issues beyond the scope of analysis

1    and legal interpretation typically undertaken by the VCGCB, and claims involving complex issues

2    are best determined by the courts.  ECF No. 45-22 at 4-5.

3    **II.      Request for Judicial Notice (ECF No. 45-42 and ECF No. 86 at 46-48)**

4          **A.      Defendants' Request for Judicial Notice (ECF No. 45-42)**

5          Defendants have filed a Request for Judicial Notice ("RJN"), ECF No. 45-42, and request

6    that the Court take judicial notice of the dockets of, and pleadings filed in the following cases: (1)

7    *Ivan Kilgore v. Nappi, et al.*, C No. 14-15711 (9th Cir.) ("*Nappi*"); (2) *Kilgore v. Kelly, et al.*, C

8    No. 14-16023 (9th Cir.) ("*Kilgore Appeal*"); and (3) *Kilgore v. Director, et al.*, C No. 11-01745

9    (E.D. Cal.) ("*Director*").  Specifically, Defendants request that the Court take judicial notice of the

10   following documents in *Nappi*:

11          •   Court docket (RJN, Ex. E)

12          •   March 20, 2015 Memorandum (RJN, Ex. A)

13          •   April 3, 2015 Petition for Rehearing En Banc (RJN, Ex. B)

14          •   July 10, 2015 Order Denying Petition for Rehearing En Banc (RJN, Ex. C)

15          •   July 20, 2015 Mandate (RJN, Ex. D)

16   Defendants also request that the Court take judicial notice of the following documents in

17   *Kilgore Appeal*:

18          •   Court Docket (RJN, Exs. G, L)[8]

19          •   September 25, 2015 Notice of Change of Address (RJN, Ex. F)

20          •   September 28, 2015 Notice of Change of Address (RJN, Ex. H)

21          •   October 22, 2015 Memorandum (RJN, Ex. J)

22          •   November 6, 2015 Mandate (RJN, Ex. K)

23   Defendants also request that the Court take judicial notice of the following documents in

24   *Director*:

25
26          •   Court Docket (RJN, Exs. I, Q)[9]

27   _____
     [8] Exhibits G and L to the RJN are identical, but were printed on different dates, two weeks apart.
28   *Compare* RJN, Ex. G *with* RJN, Ex. L.
     [9] Exhibits I and Q to the RJN are identical, but were printed on different dates, two weeks apart.

United States District Court
Northern District of California

- February 26, 2016 Order and Findings and Recommendation (RJN, Ex. M)

- March 7, 2016 Motion for Reconsideration of Kilgore's Motion for Appointment of Counsel (RJN, Ex. N)

- March 21, 2016 Order denying Motion for Reconsideration of Kilgore's Motion for Appointment of Counsel (RJN, Ex. O)

- March 31, 2016 Order adopting the February 26, 2016 Findings and Recommendations (RJN, Ex. P)

The Court GRANTS Defendants' requests for judicial notice of the existence of these dockets and the existence of the specified pleadings in *Ivan Kilgore v. Nappi, et al.*, C No. 1415711 (9th Cir.) ("*Nappi*"); *Kilgore v. Kelly, et al.*, C No. 14-16023 (9th Cir.) ("*Kilgore Appeal*"); and *Kilgore v. Director, et al.*, C No. 11-01745 (E.D. Cal.) ("*Director*"), attached as exhibits A-Q to the Request Judicial Notice, because they are court pleadings or other court records that have a direct relation to the matters at issue.  *See Rosales-Martinez v. Palmer*, 753 F.3d 890, 895 (9th Cir. 2014) ("It is well established that [federal courts] may take judicial notice of proceedings in other courts."); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (federal courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.") (internal quotation marks and citation omitted).  However, the Court does not take judicial notice of the documents for the truth of the matters asserted in them. *In re Bare Escentuals, Inc. Sec. Lit.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) (in considering defendant's motion to dismiss, court took judicial notice of existence of unrelated court documents, but declined to take judicial notice of truth of matters set forth in these documents); *see also McMunigal v. Bloch*, No. C 10–02765 SI, 2010 WL 5399219, *2 n.1 (N.D. Cal. Dec. 23, 2010) (granting judicial notice of documents filed in another lawsuit for purposes of noticing existence of lawsuit, claims made in lawsuit, and that various documents were filed, but not for truth of matters asserted in documents).

Defendants also request that the Court take judicial notice of the Certification of A.

---

*Compare* RJN, Ex. I *with* RJN, Ex. Q.

United States District Court
Northern District of California

1  Navarro signed August 13, 2019 and the documents attached to the Navarro Certification,

2  docketed at ECF No. 45-22 ("Navarro Certification").  The Navarro Certification consists of (1) a

3  certification by Ms. Navarro, a senior legal analyst with the California Attorney General's Office's

4  Correctional Law Section, stating that she effectively serves as a custodian of records for the

5  California Government Claims Program ("GCP")'s Standardized Insurance Management System

6  ("SIMS") computer database because she has been trained by GCP staff as to how to access the

7  database and that she can verify the authenticity of the records she downloads from the GCP

8  SIMS, ECF No. 45-22 at 2; (2) a "Certification of Access to GCP's Computer Database," signed

9  by Nicholas Wagner, a GCP staff services manager, attesting that the GCP's SIMS computer

10  database is maintained in the ordinary course of the GCP's business, at or near the time the

11  government claim is received or acted on by the GCP; that the California Attorney General's

12  Office has read-only access to the GCP's SIMS computer database; and that when the California

13  Attorney General's Office's downloads documents from the GCP SIM's computer database, the

14  downloads are true and correct copies of the GCP's government claims records, ECF No. 45-22 at

15  3; (3) the full GCP record for Claim No. 18006790, ECF No. 45-22 at 4-17; and (4) the full GCP

16  record for Claim No. 626434, ECF No. 45-22 at 18-44.  The Court GRANTS Defendants' request

17  for judicial notice of the Certification of A. Navarro signed August 13, 2019, and attached

18  documents, which include the Government Claims Programs records for Claim Nos. 18006790

19  and 626434, because these documents are not subject to reasonable dispute in that they are capable

20  of accurate and ready determination by resort to sources whose accuracy reasonably cannot be

21  questioned.  Fed. R. Evid. 201(b).

22         **B.      Plaintiff's Request for Judicial Notice (ECF No. 86 at 46-48)**

23         In footnotes to his opposition to Defendants' summary judgment motion, Plaintiff requests

24  that the Court take judicial notice of (1) the proceedings in C No. 34-2017-00212783-CU-PO-

25  GDS, *Kilgore v. Compton, et al.* ("*Compton*"), to show that the demurrer in this action was

26  granted in part due to the complaint not being timely filed; (2) *Benefield, et al. v. Dep't. of Corr.*

27  *and Rehab.*, 171 Cal. App. 4th 469 (Cal. Ct. App. 2009) to show that defendant Benefield's CDCR

28  employment had been terminated and was reinstated after a technicality was found in the

26

termination proceedings; (3) the 2019 report prepared by the California Inspector General titled "Special Review of Salinas Valley State Prison's Processing of Inmate Allegations of Staff Misconduct," to show that it is reasonable to infer that inmate complaints to the Ombudsman's Office and other officials were not kept confidential and that Defendants were therefore aware of Plaintiff's December 2015 letter to the Ombudsman; and (4) that inmate Alfredo filed a staff complaint against defendant Benefield in 2012, reporting similar misconduct and constitutional violations. ECF No. 86 at 46-48. The Court DENIES these requests for judicial notice because Plaintiff is requesting that the Court find true the conclusions that Plaintiff has drawn from these documents. While the Court can take judicial notice of the existence of pleadings filed in other courts, it cannot take judicial notice of the truth of the matters asserted in the other pleadings. *See In re Bare Escentuals, Inc. Sec. Lit.*, 745 F. Supp. 2d at 1067; *McMunigal v. Bloch*, No. C 10–02765 SI, 2010 WL 5399219, *2 n.1 (N.D. Cal. Dec. 23, 2010). The Court DENIES Plaintiff's request for judicial notice.

## III.     Motion for Summary Judgment

Defendants have filed a motion for summary judgment. ECF No. 45. Plaintiff has filed an opposition, ECF No. 86, and Defendants have filed a reply, ECF No. 87. Defendants argue that they are entitled to summary judgment for the following reasons. First, they argue that Plaintiff has failed to exhaust certain of his denial of access to the courts claims, certain of his retaliation claims, and his deliberate indifference to serious medical need claim against defendant Sandoval. Second, they argue that the claims fail on the merits. Third, they argue that they are entitled to qualified immunity. Fourth, they argue that the state-law negligence claim fails because Plaintiff cannot show that defendant Garcia injured him and because Plaintiff failed to comply with the Government Claims Act. *See generally* ECF No. 45. The Court addresses each argument in turn below, and addresses Plaintiff's rebuttal to these arguments.

### A.     Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the

1   case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material

2   fact is genuine if the evidence is such that a reasonable jury could return a verdict for the

3   nonmoving party.  *See id.*

4           A court shall grant summary judgment "against a party who fails to make a showing

5   sufficient to establish the existence of an element essential to that party's case, and on which that

6   party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an

7   essential element of the nonmoving party's case necessarily renders all other facts immaterial."

8   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party bears the initial

9   burden of identifying those portions of the record that demonstrate the absence of a genuine issue

10  of material fact.  *Id.*  The burden then shifts to the nonmoving party to "go beyond the pleadings

11  and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

12  file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *See id.* at 324

13  (citing Fed. R. Civ. P. 56(e)).

14          The court's function on a summary judgment motion is not to make credibility

15  determinations or weigh conflicting evidence with respect to a disputed material fact.  *See T.W.*

16  *Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must

17  be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the

18  facts must be viewed in a light most favorable to the nonmoving party.  *See id.* at 631.  If the

19  evidence produced by the moving party conflicts with evidence produced by the nonmoving party,

20  the court must assume the truth of the evidence submitted by the nonmoving party.  *See Leslie v.*

21  *Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

22          **B.      Exhaustion**

23              **1.      PLRA Exhaustion Requirement**

24          The PLRA sets forth the following exhaustion requirement:  "No action shall be brought

25  with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

26  confined in any jail, prison, or other correctional facility until such administrative remedies as are

27  available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA's exhaustion requirement is

28  mandatory.  *Jones v. Bock*, 549 U.S. 199, 211 (2007).  The administrative remedies need not be

United States District Court
Northern District of California

plain, speedy, and effective; need not satisfy minimum federal standards, and need not be capable of providing the form of relief sought. *Ross v. Blake*, 136 S. Ct. 1850, 1858, (2016) (citing to *Porter v. Nussle*, 534 U.S. 516, 524 (2002) and *Booth v. Churner*, 532 U.S. 731, 741 (2001)).

The PLRA requires "proper exhaustion" of available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91. Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." *Jones*, 549 U.S. at 217–18. The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Id.* at 218. In California, the regulation requires the prisoner "to lodge his administrative complaint on CDC form 602 and 'to describe the problem and action requested.'" *See Morton v. Hall*, 599 F.3d 942, 945 (9th Cir. 2010) (quoting former Cal. Code Regs. tit. 15 § 3084.2(a)). During the relevant time period, California regulations also required that the grievance name "all staff member(s) involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3) (2016).

Failure to exhaust under the PLRA is an affirmative defense that the defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014). Once the defendant has carried that burden, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id.* at 1172. If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Albino*, 747 F.3d at 1166. But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.* A prisoner must provide evidence, not just make conclusory

29

allegations, to meet his burden to show that existing and generally available administrative remedies were effectively unavailable.  *See Draper v. Rosario*, 836 F.3d 1072, 1079-80 (9th Cir. 2016).  But, as required by *Jones*, the ultimate burden of proof remains with the defendant. *Albino*, 747 F.3d at 1172.

### 2.    Denial of Access to the Courts Claim

Liberally construed, the following allegations in the complaint state cognizable claims for denial of access to the courts:

- In the last two weeks of September 2015, defendant Benefield twice denied Plaintiff's request for the forms to apply for PLU status.

- Defendant Benefield refused Plaintiff's request for indigent supplies in September and October 2015.

- On December 8, 2015, defendant Benefield stated that he would not adhere by OP 34 and would not distribute indigent supplies to Plaintiff.

- On October 15, 2015, defendant Benefield denied Plaintiff's request to access the law library to make photocopies.

- Defendant Colvin twice denied Plaintiff's request for PLU status, once in September 2015 and once in October 2015.

- Defendant Benefield refused Plaintiff's request for indigent supplies on November 16, 2015.

- Defendant Colvin has an unwritten policy to not make pen and paper readily available to inmates using the law library.

- On December 14, 2015, defendant Benefield refused to release Plaintiff to attend law library.

- In January 2016, defendant Benefield refused to provide Plaintiff with paper and pen-filler, as was required by the partial grant of Grievance No. SVSP-L-15-05194.

- On February 23, 2015, Plaintiff was issued envelopes, but not paper or pen-filler.

- On March 1-3, 2016, defendant Garcia denied Plaintiff's requests to access the law library.

Plaintiff has identified Grievance No. SVSP-L-15-05194 as exhausting his administrative remedies.  ECF No. 86 at 17.  Defendants argue that Grievance No. SVSP-L-15-05194, submitted on October 1, 2015, did not exhaust administrative remedies for the above claims for denial of access to the courts because (1) Grievance No. SVSP-L-15-05194 only grieves being denied PLU status and 28-line paper and pen-fillers, and did not specifically allege that Defendants had

30

prevented him from filing petitions for a writ of certiorari in either *Nappi* or *Kelly Appeal*, or from prosecuting *Director*; (2) the filing of Grievance No. SVSP-L-15-05194 predates the relevant court deadlines in *Kelly Appeal* and *Director*; and (3) Grievance No. SVSP-L-15-05194 does not describe any wrongdoing by defendant Garcia.  ECF No. 45 at 20-21.  Plaintiff argues that he is not required to grieve each separate instance that he was denied access to the courts so long as he has alerted prison officials to the general issues that denied him access to the courts, citing to *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016).  Plaintiff argues that Grievance No. SVSP-L-15-05194 exhausted the claims in this action because it sufficiently alerted SVSP prison officials to a larger systemic problem of denial of access to the courts by pointing out the following specific events:  he was improperly denied PLU status by defendant Colvin despite another prison librarian approving PLU status for Plaintiff for the same time period; defendant Benefield denied him PLU application forms; both the prison and Benefield denied him court paper, any paper other than scratch paper, and a writing instrument; Legal Tech Assistant Garcia informed Plaintiff that any unscheduled access to the library had to be approved by housing unit officers; and defendant Benefield refused to contact the library to allow Plaintiff to photocopy grievances.  Plaintiff further argues that he clarified the scope of Grievance No. SVSP-L-15-05194 in his second and third level appeals and that prison officials improperly and incorrectly screened out these issues from the issues raised in the initial grievance.  Plaintiff also notes that he identified defendants Benefield, Colvin, and Garcia by name in the grievance.  Finally, Plaintiff argues that any failure to exhaust administrative remedies was due to prison officials' harassment rendering administrative remedies effectively unavailable to him.  ECF No. 86 at 17-21.

Viewing the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has not exhausted his administrative remedies with respect to the events that happened after October 21, 2015, the date that Grievance No. SVSP-L-15-05194 was filed.  A grievance cannot exhaust claims for events that happen after its submission.  The following events happened after Grievance No. SVSP-L-15-05194 was submitted:  On November 16 and December 8, 2015, and in January 2016, defendant Benefield refused to provide Plaintiff with indigent supplies.  On December 14, 2015, defendant Benefield refused to release Plaintiff from his housing unit to attend law library.

31

1    On February 23, 2106, Plaintiff was not issued paper and pen filler.  On March 1-3, 2016

2    defendant Garcia denied Plaintiff's requests to access the law library.  Plaintiff's argument that

3    these events should be considered exhausted because they are part of an overall pattern of denial

4    of access to the Court to which he alerted prison officials with Grievance No. SVSP-L-15-05194

5    is unpersuasive.  This argument relies on an overbroad reading and application of *Griffin v.*

6    *Arpaio*, 557 F.3d 1117 (9th Cir. 2009), and a disregard for the holding in *Jones v. Bock*, 549 U.S.

7    199 (2007).

8        In *Jones*, the Supreme Court held that a prison's regulations govern the level of detail

9    necessary in a grievance, and compliance with the prison's requirements is what is necessary to

10   properly exhaust.  549 U.S. at 218.  The applicable CDCR regulations at the time required inmates

11   to describe the "specific issue" being grieved and the relief requested by stating all facts known

12   and available regarding the issue, and by listing all staff member(s) involved and describing their

13   involvement in the issue.  Nothing in the CDCR regulations provide or imply that an inmate's

14   grievance regarding a specific issue suffices to grieve a general claim about that category of prison

15   conditions.  Plaintiff repeats the language in *Griffin*, wherein the Ninth Circuit held that "'a

16   grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought'"

17   because the purpose of a grievance is to alert the prison to a problem and facilitate its resolution,

18   not to lay groundwork for litigation. *Griffin*, 557 F.3d at 1120 (9th Cir. 2009) (quoting *Strong v.*

19   *David*, 297 F.3d 646, 650 (7th Cir. 2002)).  However, *Griffin*'s holding was limited to situations

20   where the prison's grievance procedures did not specify the level of factual specificity required in

21   the grievance.  In *Griffin*, the prison's grievance procedure provided little guidance as to the level

22   of specificity required for the grievance, only instructing the grievant to briefly describe the

23   complaint and a proposed resolution.  *Id.*  Because the applicable CDCR regulations required

24   inmates to describe the specific issue being grieved, Grievance No. SVSP-L-15-05194 does not

25   exhaust events that happened after its submission, even if Plaintiff views the later events as part of

26   a larger pattern.  Finally, Plaintiff's argument that his failure to raise access to courts claims

27   arising from events that occurred after October 21, 2015, and from defendant Colvin's alleged

28   unwritten policy was because Defendants' retaliation and harassment rendered the administrative

remedy process to be effectively unavailable to him is contradicted by the record.  According to the IATS, Plaintiff had at least eight grievances accepted at the third level of review between November 2015 and April 2016, indicating that administrative remedies were available to him.

Grievance No. SVSP-L-15-05194 does exhaust the following access to the courts claims: (1) in the last two weeks of September 2015, defendant Benefield twice denied Plaintiff's request for the forms to apply for PLU status; (2) defendant Benefield refused Plaintiff's requests for indigent supplies in September and October 2015; (3) on October 15, 2015, defendant Benefield denied Plaintiff's request to access the law library to make photocopies; (4) defendant Colvin twice denied Plaintiff's request for PLU status, once in September 2015 and once in October 2015; and (5) there is an unwritten law library policy denying inmates access to paper and pen-filler.

Accordingly, the Court GRANTS summary judgment in favor of Defendants for failure to exhaust administrative remedies with respect to the following claims: (1) on November 16, 2015, Defendant Benefield refused Plaintiff's request for indigent supplies; (2) on December 8, 2015, defendant Benefield stated that he would not adhere by OP 34 and would not distribute indigent supplies to Plaintiff; (3) on December 14, 2015, defendant Benefield refused to release Plaintiff to attend law library; (4) in January 2016, defendant Benefield refused to abide by the partial grant of Grievance No. SVSP-L-15-05194, which required SVSP correctional officials to provide Plaintiff with paper and pen-filler; (5) on February 23, 2015, Plaintiff was issued envelopes, but not provided paper or pen-filler; and (6) on March 1-3, 2016, defendant Garcia denied Plaintiff's requests to access the law library.  The Court DISMISSES these claims without prejudice to re-filing once Plaintiff has exhausted administrative remedies with respect to these claims.

### 3.      Retaliation Claim against Clavijo

Liberally construed, the allegation that, on December 1 and 9, 2015, defendant Clavijo, along with defendant Benefield, informed Plaintiff and inmate Browne that they would restrict the phone privileges of the inmates who signed the group grievance states a cognizable claim for First Amendment retaliation against defendant Clavijo.  Defendants argue that this claim against defendant Clavijo is not exhausted because only two of the exhausted grievances reference

United States District Court
Northern District of California

defendant Clavijo – Grievance No. SVSP-L-15-06122 and Grievance No. SVSP-L-15-05194 – and neither grievance alleges retaliation by defendant Clavijo or references the December 10 and 14 cell searches.  Defendants describe Grievance No. SVSP-L-15-06122 as grieving retaliatory action by defendant Benefield and complaining that Plaintiff reported defendant Benefield's misconduct to defendant Clavijo, but defendant Clavijo took no action; and describe Grievance No. SVSP-L-15-05194 as grieving the designation of Facility C8 as overflow housing for the Administrative Segregation Unit.  ECF No. 45 at 24-25.  Plaintiff does not dispute that Grievance No. SVSP-L-15-05194 does not exhaust his claim against Clavijo.  Plaintiff argues that Grievance No. SVSP-L-15-06122 exhausts his administrative remedies against defendant Clavijo because the grievance put prison officials on notice of inmates being threatened for joining his group grievance, and that he was unaware of defendant Clavijo's identity at the time he filed this grievance.  He argues that he did not later identify defendant Clavijo in the grievance process or file a separate grievance against defendant Clavijo because the intense level of retaliation he faced rendered administrative remedies effectively unavailable to him.  ECF No. 86 at 29-30.

Viewing the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has not exhausted his administrative remedies with respect to his retaliation claim against defendant Clavijo.  Grievance No. SVSP-L-15-06122 only identifies defendant Benefield as making the threat to restrict phone privileges, and does not reference any other correctional official, even an unnamed one.  To the extent that Plaintiff learned of defendant Clavijo's identity later, Plaintiff does not identify defendant Clavijo in his appeals of the first and second level denials.  And, as discussed *supra*, Plaintiff's claim that administrative remedies were effectively unavailable to him because of Defendants' harassment and retaliation is contradicted by the record, which shows that he continued to utilize the administrative remedy process in the ensuing months.  CDCR regulations require the inmate to list all staff members involved and describe their involvement in the issue, but Plaintiff has not listed another correctional official outside of defendant Benefield as involved in the retaliatory behavior, much less named defendant Clavijo as a participant in the retaliatory action at any point in the administrative remedy process for Grievance No. SVSP-L-15-06122.  Accordingly, the Court GRANTS summary judgment for failure to exhaust administrative

United States District Court
Northern District of California

1    remedies in favor of defendant Clavijo with respect to the retaliation claim.  The Court

2    DISMISSES this claim without prejudice to re-filing once Plaintiff has exhausted administrative

3    remedies with respect to this claim.  Because this is the only claim against defendant Clavijo, the

4    Court DISMISSES defendant Clavijo from this action.

5                    **4.        Medical Needs Claim against Sandoval**

6            Defendants argue that Plaintiff has not exhausted his administrative remedies for his claim

7    that defendant Sandoval was deliberately indifferent to his serious medical needs, in violation of

8    the Eighth Amendment because Grievance No. SVSP-L-16-01458, the only grievance to grieve

9    the denial of medical attention for the knee injury suffered on March 3, 2016, did not name

10   defendant Sandoval.  ECF No. 45 at 29.  Plaintiff argues that he was unaware of defendant

11   Sandoval's identity at the time he filed Grievance No. SVSP-L-16-01458, and therefore referred to

12   defendant Sandoval as a sergeant, which was sufficient to alert prison authorities that he was

13   grieving defendant Sandoval's actions.  ECF No. 86 at 42.

14           Viewing the record in the light most favorable to Plaintiff, the Court finds that there is a

15   triable issue of fact as to whether Plaintiff has exhausted his administrative remedies for his claim

16   against defendant Sandoval.  Grievance No. SVSP-L-16-01458 states in relevant part: "When the

17   *two sgts* eventually came, Benefield and Garcia by then had removed the handcuffs, and attempted

18   to cover up the thrashing of my cell by stating I had done it and claimed they did not force me to

19   the floor after handcuffing me.  I was then refused medical treatment and told to return to my

20   cell."  ECF No. 45-33 at 6 (emphasis added).  Making all reasonable inferences in Plaintiff's

21   favor, the persons refusing to allow medical treatment could be Benefield, Garcia, and the two

22   sergeants.  Defendant Sandoval does not dispute that he was the sergeant who arrived to inspect

23   the scene.  Grievance No. SVSP-L-16-01458 sufficed to alert prison officials that Plaintiff had not

24   been provided the medical treatment he requested by defendants Benefield and Garcia and the two

25   sergeants present at the aftermath of the March 3, 2016 cell search.  *Reyes*, 810 F.3d at 658-59

26   (plaintiff's claim exhausted as to prison doctors named in federal action where grievance plainly

27   put prison officials on notice of nature of wrong alleged in federal action – denial of pain

28   medication by defendant doctors – and prison officials easily identified named prison doctors'

United States District Court
Northern District of California

involvement in issue); *cf. Wilkerson v. Wheeler*, 772 F.3d 834, 840 (9th Cir. 2014) (claim properly exhausted where inmate described nature of wrong and identified defendant as responding officer who applied pressure to inmate's ankle deliberately to inflict pain). The Court therefore DENIES Defendants' request for summary judgment for failure to exhaust administrative remedies with respect to the claim that defendant Sandoval was deliberately indifference to Plaintiff's serious medical needs.

### C.   Merits

#### 1.   First Amendment Access to the Courts Claim (Benefield, Garcia and Colvin)

##### a.   Legal Standard

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To establish a claim for any violation of the right of access to the courts, the prisoner must prove that there was an inadequacy in the prison's legal access program that caused him an actual injury. *See Lewis*, 518 U.S. at 350–55. To prove an actual injury, the prisoner must show that the inadequacy in the prison's program hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement. *See id.* at 354–55. The Ninth Circuit has "traditionally differentiated between two types of access to courts claims: those involving prisoners' right[s] to affirmative assistance and those involving prisoners' rights to litigate without active *interference*." *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) (emphasis in original). A prisoner's constitutional right to litigate without interference does not require prison officials to provide affirmative assistance in the preparation of legal papers, but rather forbids states from erecting barriers that impede the right of access of incarcerated persons. *Silva*, 658 F.3d at 1102. The right of access to the courts without undue interference extends beyond the pleading stages. *Id.* Claims for interference with the right to litigation fall into one of two categories. The first category consists of "forward-looking claims," or "claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 413 (2002). The second category consists of "backward-looking claims," or claims that stem from either the loss of

United States District Court
Northern District of California

a meritorious suit that cannot now be tried because of the interference of government officials or from the inadequate settlement of a meritorious case. *Id.* at 413–14. Once the prisoner establishes a denial of access to the courts, the court should then determine whether the hindrance of the prisoner's access to court was reasonably related to legitimate penological interests. *See Lewis*, 518 U.S. at 361 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). If the hindrance passes the *Turner* test, the denial of access to the courts claim will fail even if there was actual injury.

### b.    Analysis

The remaining First Amendment access to the court claims are as follows: (1) in the last two weeks of September 2015, defendant Benefield twice denied Plaintiff's request for forms to apply for PLU status; (2) defendant Benefield refused Plaintiff's requests for indigent supplies in September and October 2015; (3) on October 15, 2015, defendant Benefield denied Plaintiff's request to access the law library to make photocopies; (4) defendant Colvin twice denied Plaintiff's request for PLU status, once in September 2015 and once in October 2015. Accordingly, the Court addresses only the parties' arguments regarding these claims.

Defendants argue that they are entitled to summary judgment on Plaintiff's First Amendment access to the courts claim because Plaintiff did not suffer "actual injury" with respect to *Nappi* and *Kelly Appeal*. Specifically, Defendants argue that the First Amendment right to access the courts is limited to the initiation of a court action and does not guarantee the inmate the ability to litigate effectively once in court. Defendants argue that Plaintiff was not prevented from filing a petition for a writ of certiorari in *Nappi* because the bulk of the 90-day deadline to file the petition was spent at CSP-Corcoran as the deadline for filing the petition expired on October 8, 2015 and Plaintiff was transferred to SVSP on September 22, 2015; and because prison records show that Plaintiff was able to access the law library, send out legal mail, and file court pleadings between September 22, 2015 and October 8, 2015. Specifically, Plaintiff visited the law library on October 1 and 8, 2015; mailed four pieces of legal mail on September 24, 2015; and filed court pleadings on September 25 and 28, 2015 – *Kilgore Appeal*, Notices of Change of Address, RJN, Exs. F, H. Defendants argue that Plaintiff was not prevented from filing a petition for a writ of certiorari in *Kilgore Appeal* because the record indicates that Plaintiff was able to visit the law

37

library and actively pursue other litigation during the relevant time period.  Specifically, the Ninth

Circuit issued its final order in *Kilgore Appeal* on October 22, 2015, and the deadline to file a

petition in the Supreme Court in *Kilgore Appeal* was January 20, 2016.  Between October 22,

2015 and January 20, 2016, Plaintiff visited the law library 14 times and mailed 10 pieces of legal

mail.  Finally, Defendants imply that any failure to prosecute *Nappi* or *Kelly Appeal* was due to

Plaintiff's failure to seek extensions of time to meet his court deadlines.  Tomlinson Decl. ¶ 8 and

Ex. B; Benevides Decl. ¶ 4 and Exs. A, B.

Plaintiff argues that Defendants' actions caused him actual injury because they prevented

from filing petitions for a writ of certiorari.  He states that the First Amendment right to access the

courts encompasses the right to litigate claims to conclusion without active interference by prison

officials.  He states that his legal filings during the relevant time period were not substantive

filings, but consisted primarily of standard change of address forms, proofs of service, and/or brief

pleadings using scratch paper and paper borrowed from other inmates.  He further states that being

able to frequently access the library does not indicate the ability to prepare substantive pleadings

as he held GLU status most of the time, and GLU access to the library was significantly more

limited than PLU access; and he had no access to pen filler and paper to prepare pleadings.  ECF

No. 86 at 13-17.

Viewing the record in the light most favorable to Plaintiff, the Court finds that there is a

triable issue of material fact as to whether defendants Benefield and Colvin actively interfered

with Plaintiff's ability to litigate his claims in *Nappi* and *Kelly Appeal*.  As an initial matter,

Plaintiff is correct that the First Amendment right is not limited to the initiation of a court action.

Prisoners have a First Amendment right to litigate claims challenging the conditions of their

confinement to conclusion without active interference by prison officials.  *See Silva*, 658 F.3d at

1103.  At summary judgment, the Court must assume the truth of the evidence submitted by the

nonmoving party.  *See T.W. Elec. Serv.*, 809 F.2d at 631.  The Court therefore assumes that

although Plaintiff accessed the library on a near-weekly basis, as a GLU status user, Plaintiff had

limited access to library resources because of the number of inmates using the library at the same

time.  The Court further assumes that even if Plaintiff had obtained extensions of the relevant

court deadlines, his continuing inability to obtain paper and pen-filler from defendant Benefield would have rendered him unable to meet the new deadlines.

Viewed in the light most favorable to Plaintiff, Defendant Benefield's refusal to provide Plaintiff the PLU forms arguably actively interfered with Plaintiff's ability to litigate *Nappi* because it delayed Plaintiff in obtaining PLU status, which, according to Plaintiff, would have better enabled him to use the law library's resources; defendant Benefield's refusal to provide indigent supplies arguably actively interfered with Plaintiff's ability to litigate *Nappi* and *Kelly Appeal* because it resulted in Plaintiff having neither paper nor pen to prepare the petitions, as Plaintiff has stated that the library would not provide the supplies and nothing in the record indicates that other housing unit officers were willing or able to provide Plaintiff with these supplies; and, assuming that the photocopies were necessary for filing a petition for a writ of certiorari in either *Nappi* or *Kelly Appeal*, defendant Benefield's refusal to allow Plaintiff to access the law library to make photocopies also constituted active interference.

With respect to defendant Colvin, the record is clear that he was only involved in the denial of Plaintiff's second request for PLU status. The correctional official who denied the first request for PLU status, law librarian Tomlinson, is not named as a defendant in this action. Accordingly, the Court GRANTS summary judgment in favor of Defendants with respect to the denial of Plaintiff's September 2015 request for PLU status. However, the Court finds that there is a triable issue of fact as to whether the denial of Plaintiff's second PLU application actively interfered with Plaintiff's ability to litigate *Nappi* to its conclusion. The second PLU application was denied on the grounds that *Nappi* was terminated on March 20, 2015, and that the deadline to file a petition for a writ of certiorari had passed. ECF No. 45-15 at 2. However, because Petitioner had timely filed a petition for rehearing en banc, the March 20, 2015 affirmance of *Vigra* in *Nappi* was not the date from which to calculate the deadline for filing a petition for a writ of certiorari. Rather, the deadline to file a petition for a writ of certiorari was October 19, 2015, ninety days from the July 20, 2015 denial of the rehearing. U.S. Sup. Ct. 13.3. This would have been evident from the *Nappi* docket and a review of the relevant court rules. Plaintiff's request for PLU status was twice denied based on this clearly erroneous reasoning. And defendant Colvin

was aware that Plaintiff had been previously granted PLU status for *Nappi* at his prior institution. Viewing the record in the light most favorable to Plaintiff, the Court finds that there is a triable issue of fact as to whether defendant Colvin's denial of Plaintiff's October 2015 request for PLU status erected barriers to Plaintiff's First Amendment right to litigate *Nappi* and/or *Kelly Appeal* to their conclusion.

The Court GRANTS summary judgment in favor of Defendants with respect to the First Amendment access to the courts claim arising out of the denial of the September 2015 request for PLU status, and DENIES summary judgment with respect to the following First Amendment access to the courts claim: (1) in the last two weeks of September 2015, defendant Benefield twice denied Plaintiff's request for the forms to apply for PLU status; (2) defendant Benefield refused Plaintiff's requests for indigent supplies in September and October 2015; (3) on October 15, 2015, defendant Benefield denied Plaintiff's request to access the law library to make photocopies; (4) defendant Colvin denied Plaintiff's request for PLU status in October 2015.

### 2.   First Amendment Retaliation Claim

#### a.   Legal Standard

If a state actor takes action against an individual in retaliation for that individual exercising a constitutional right, the individual has a cognizable First Amendment retaliation claim under 42 U.S.C. § 1983, even if the action would not be unconstitutional in the absence of retaliatory motive. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977) ("Even though [plaintiff] could have been discharged for no reason whatever, and had no constitutional right to a hearing prior to the decision not to rehire him, he may nonetheless establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedoms."). However, if the state actor would have taken the same action in the absence of the protected conduct, the action does not violate the First Amendment even if the protected conduct was a motivating factor. *Crawford-El v. Britton*, 523 U.S. 574, 593 (1998). To prove a First Amendment retaliation claim, a plaintiff must show that retaliatory animus was the but-for cause of the challenged action. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008).

United States District Court
Northern District of California

1

2

3          "Within the prison context, a viable claim of First Amendment retaliation entails five basic

4    elements:  (1) An assertion that a state actor took some adverse action against an inmate (2)

5    because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

6    exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

7    correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

8    Harm that "would chill a 'person of ordinary firmness' from complaining" is sufficient.  *Shepard*

9    *v. Quillen*, 840 F.3d 686, 691 (9th Cir. 2016) (quoting *Rhodes*, 408 F.3d at 569) (placement in

10   administrative segregation or even threat do so on its own amounts to adverse action satisfying the

11   first element).  The mere threat of harm can be a sufficiently adverse action to support a retaliation

12   claim.  *Id.* at 688-89; *Brodheim*, 584 F.3d at 1270.

13         Prisoners may not be retaliated against for exercising their right of access to the courts.

14   *See Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995).  The right of access to the courts

15   extends to established prison grievance procedures.  *See Bradley v. Hall*, 64 F.3d 1276, 1279 (9th

16   Cir. 1995).  Evidence probative of retaliatory animus includes proximity in time between the

17   protected speech and the alleged adverse action, a prison official's expressed opposition to the

18   speech, and that the prison official's proffered reason for the adverse action was false or

19   pretextual.  *Shephard*, 840 F.3d at 690.  The prisoner need not demonstrate a total chilling of his

20   First Amendment rights in order to establish a retaliation claim.  *See Rhodes*, 408 F.3d at 568-69

21   (rejecting argument that inmate did not state a claim for relief because he had been able to file

22   inmate grievances and a lawsuit).  That a prisoner's First Amendment rights were chilled, though

23   not necessarily silenced, is enough.  *Id.* at 569 (destruction of inmate's property and assaults on the

24   inmate enough to chill inmate's First Amendment rights and state retaliation claim, even if inmate

25   filed grievances and a lawsuit).

26                          **b.    Analysis**

27         Liberally construed, the complaint states the remaining First Amendment retaliation

28   claims.  Defendant Benefield retaliated against Plaintiff for engaging in protected conduct in the

41

following ways: on November 30, 2015, he told Plaintiff that because Plaintiff filed SVSP-L-15-05194, Plaintiff should not ask for shit while housed in Benefield's building, referring to legal forms, indigent supplies, and access to the Library Service, and that defendant Benefield would continue to harass Plaintiff and hinder his access to the law library; on December 1 and 9, 2015, defendant Benefield threatened Plaintiff that he would restrict the phone privileges of inmates who signed Plaintiff's group grievance; on December 10, 2015, defendant Benefield trashed Plaintiff's cell for sending a letter to the Ombudsman's office; on December 14, 2015, defendant Benefield refused to release Plaintiff from his housing unit to attend law library and trashed Plaintiff's cell; and on March 3, 2016, defendant Benefield released Plaintiff to yard late and defendants Benefield and Garcia trashed Plaintiff's cell. *See generally* ECF No. 1.

Defendants have addressed only the three cell searches.  Defendants argue that they are entitled to summary judgment on Plaintiff's First Amendment retaliation claim because the cell searches were carried out pursuant to prison policy requiring officers to search three cells a day; the December 10, 2015 cell search was not motivated by Plaintiff's December 2015 letter to the Ombudsman because defendant Benefield did not know of this letter, and could not have known of this letter because mail is collected during Third Watch and defendant Benefield works during Second Watch; Plaintiff's requests to access the law library could not have motivated defendant Benefield's cell searches on December 14, 2015 and March 3, 2016, because Plaintiff attended the law library days after these cell searches and attended the law library on a near weekly basis; there is no evidence that defendants Benefield and Garcia's actions had a chilling effect as Plaintiff continued to submit grievances; cell and property searches promote prison security and promote a legitimate penological interest; and Plaintiff has not provided any evidence that defendant Benefield was motivated by a desire to retaliate for a past grievance.

Viewing the record in the light most favorable to Plaintiff, there is a triable issue of fact as to whether defendants Benefield and Garcia searched Plaintiff's cell as part of the prison's requirement to conduct three cell searches daily, or in retaliation for Plaintiff's protected conduct. There is significant evidence in the record from which retaliatory animus can be inferred.  In the two weeks before the December 2015 cell searches, defendant Benefield, on three occasions,

expressed dissatisfaction with Plaintiff's grievance activity and threatened adverse action.  On November 30, 2015, defendant Benefield told Plaintiff because he had filed Grievance Nos. SVSP-L-15-05194 and SVSP-L-15-015420, Plaintiff should not ask for shit in defendant Benefield's building and that defendant Benefield would continue to harass him and hinder his access to the law library.  On December 1, defendant Benefield told Plaintiff that he would restrict the phone privileges of the inmates who signed Plaintiff's group appeal.  On December 9, defendant Benefield repeated this threat to inmate Browne.  In conducting the cell searches, defendant Benefield trashed the cell and destroyed property, which is not standard protocol for cell searches.  The March 2016 cell search took place only three months after the December cell searches.  And, the morning of the cell search, defendant Benefield engaged in a heated argument with Plaintiff about Plaintiff attempting to access the law library and reminded Plaintiff of his November 30, 2015 statement that Plaintiff should not ask for shit while housed in his building.  Defendants Benefield and Garcia falsely blamed Plaintiff for the condition of the cell after the March 3, 2016 cell search, and threatened Plaintiff with a false disciplinary charge if he insisted on having a sergeant investigate their actions.  Viewing these events in the light most favorable to Plaintiff, there is a triable issue of material fact as to whether defendants Benefield and Garcia's proffered reason for the cell searches was pretextual.  The fact that cell searches can serve legitimate penological objectives does not mean that cell searches are never retaliatory, especially where there is significant evidence supporting a finding of retaliatory intent.  *See Mt. Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. at 283-84 (if a state actor takes action against an individual in retaliation for that individual exercising a constitutional right, the individual has a cognizable First Amendment retaliation claim under 42 U.S.C. § 1983, even if the action would not be unconstitutional in the absence of retaliatory motive).  Moreover, the fact that Plaintiff continued to file grievances despite these cell searches does not establish as a matter of law that the cell searches did not have a chilling effect, as a First Amendment retaliation claim does not require a total chilling of the plaintiff's First Amendment activity.  *Rhodes*, 408 F.3d at 568 ("Speech can be chilled even when not completely silenced . . . .  Because it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined

plaintiff persists in his protected activity, [a plaintiff] does not have to demonstrate that his speech was actually inhibited or suppressed.") (internal quotation marks and citation omitted). Three cell searches in a three-month period, accompanied by threats to not ask for anything and repeated denials of requests for indigent supplies and law library access, would chill a person of ordinary firmness from complaining.

The Court therefore DENIES summary judgment with respect to the First Amendment retaliation claims arising from the cell searches. Because Defendants have not addressed the First Amendment retaliation claims arising from defendant Benefield's threats on November 30, 2015, and December 1 and 9, 2015; defendant Benefield's December 14, 2015 refusal to release Plaintiff to attend law library; and defendant Benefield releasing Plaintiff to yard late on March 3, 2016, the action proceeds on these claims as well.

### 3. Eighth Amendment Excessive Force Claim (Benefield and Garcia)

#### a. Legal Standard

The treatment a prisoner receives in prison is subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official violates the Eighth Amendment when: (1) "the deprivation alleged [is] sufficiently serious;" and (2) the prison official possesses a "sufficiently culpable state of mind." *Id.* at 834. When prison officials are accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). Five *Hudson* factors are generally considered in determining whether a violation occurred: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003) (citing *Hudson*, 503 U.S. at 7). Because prison officials must "take reasonable measures to guarantee the safety of the inmates," *Farmer*, 511 U.S. 825, 832 (1994), "a prison official can violate a prisoner's Eighth Amendment rights by failing to intervene," *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995). To be liable under the Eighth Amendment for

44

the use of force by subordinate prison guards, a supervisor's actions must have resulted from malice, sadism or an intent to cause the inmate harm. *Jeffers v. Gomez*, 267 F.3d 895, 912-13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell prison riot, but applying "deliberate indifference" standard to claim that guards failed to act on rumors of violence to prevent riot).

### b.     Analysis

Viewing the record in the light most favorable to Plaintiff, the Court finds that there is a triable issue of material fact as to whether defendants Benefield and Garcia used excessive force on Plaintiff, in violation of the Eighth Amendment.  Plaintiff's version of events conflicts with Defendants' version.

Plaintiff describes the relevant events as follows:  Defendant Benefield had a history of animosity towards Plaintiff, as demonstrated by his refusal to provide Plaintiff with indigent supplies, threats to limit other inmates' phone privileges for signing Plaintiff's group grievance, threats to continue to harass Plaintiff and hinder his access to the law library, warnings that Plaintiff should not ask for shit while housed in defendant Benefield's housing unit, and prior cell searches wherein he trashed Plaintiff's cell.  On March 3, 2016, Plaintiff and defendant Benefield had a heated discussion over Plaintiff asking defendant Garcia if he could access the law library. While Plaintiff was at yard, defendants Benefield and Garcia trashed Plaintiff's cell under the guise of a cell search.  After seeing the condition of his cell, Plaintiff asked that a sergeant be called to witness the cell's condition and investigate the issue and that he be placed in a holding cage to preserve the integrity of the investigation.  Plaintiff refused defendants Benefield and Garcia's orders to return to the cell.  Plaintiff was handcuffed without issue and did not resist in any way.  Despite this, after Plaintiff was handcuffed, defendant Garcia refused to take Plaintiff to the holding cell and attempted to make Plaintiff return to his cell by jerking violently on the handcuffs, throwing Plaintiff off balance and onto the floor, thereby injuring Plaintiff's knee. Defendant Benefield witnessed the events and did nothing to stop the excessive force. Subsequently, when Plaintiff was in the holding cage, defendants Benefield and Garcia threatened to falsely accuse Plaintiff of a disciplinary violation if he did not withdraw his request to have a

1   sergeant investigate the events.  Defendant Garcia's use of force, accompanied by the lack of

2   medical treatment, aggravated Plaintiff's prior knee injury to a significant extent in that it caused

3   him pain for over two weeks and required a seven-day lay-in to address.

4       Defendants describe the events as follows:  Defendants Benefield and Garcia conducted

5   the search as part of their regular duties, which required three cell searches daily, and without

6   retaliatory intent.  They did not leave the cell in disarray.  When Plaintiff returned to his cell, he

7   was agitated, yelled loudly that his cell had been trashed, demanded a sergeant, and refused to

8   return to his cell.  Defendants Benefield and Garcia placed him in handcuffs to prevent him from

9   inciting other inmates to be disruptive and tried to take him to the holding cell.  Plaintiff refused to

10  walk to the holding cell, dropped to the floor, and refused to move.  Plaintiff did not request

11  medical attention for his knee, and defendants Benefield, Garcia and Sandoval did not observe

12  Plaintiff in any medical stress or having difficulty walking.

13      At summary judgment, the Court must assume the truth of the evidence submitted by the

14  nonmoving party.  *See T.W. Elec. Serv.*, 809 F.2d at 631.  Under Plaintiff's version of events,

15  which are supported by declarations from inmate-witnesses, a jury could reasonably find that

16  defendants Benefield and Garcia and Sandoval violated Plaintiff's Eighth Amendment right to free

17  of excessive force.  Under Plaintiff's version of events, a jury could reasonably find that defendant

18  Garcia violently tugged on Plaintiff's handcuffs maliciously and sadistically to cause harm; that

19  defendant Benefield allowed the use of excessive force because he had a history of acting

20  maliciously towards Plaintiff; that there was no need for any application of force; that defendants

21  Garcia and Benefield could not reasonably perceive Plaintiff to be a threat; and no efforts were

22  made to temper defendant Garcia's response.  *Hudson*, 503 U.S. at 6–7 (1992).  The Court

23  therefore DENIES Defendants' motion for summary judgment with respect to the claim that

24  defendants Benefield and Garcia used, or allowed for the use of, excessive force on Plaintiff on

25  March 3, 2016.

26          **4.      Eighth Amendment Medical Needs Claim (Benefield, Garcia, and
                      Sandoval)**

27              **a.      Legal Standard**

28

46

United States District Court
Northern District of California

1         Deliberate indifference to a prisoner's serious medical needs violates the Eighth

2 Amendment's proscription against cruel and unusual punishment.  *See Estelle v. Gamble*, 429 U.S.

3 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on*

4 *other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en

5 banc).  A determination of "deliberate indifference" involves an examination of two elements: the

6 seriousness of the prisoner's medical need and the nature of the defendant's response to that need.

7 *See McGuckin*, 974 F.2d at 1059.  A "serious" medical need exists if the failure to treat a

8 prisoner's condition could result in further significant injury or the "unnecessary and wanton

9 infliction of pain."  *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104).  A prison

10 official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious

11 harm and disregards that risk by failing to take reasonable steps to abate it.  *Farmer v. Brennan*,

12 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts from which the

13 inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the

14 inference."  *Id.*  If a prison official should have been aware of the risk, but was not, then the

15 official has not violated the Eighth Amendment, no matter how severe the risk.  *Gibson v. Cty. of*

16 *Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).  In order for deliberate indifference to be

17 established, therefore, there must be a purposeful act or failure to act on the part of the defendant

18 and resulting harm.  *See McGuckin*, 974 F.2d at 1060.  Under the relevant standard, "prison

19 officials who actually knew of a substantial risk to inmate health or safety may be found free from

20 liability if they responded reasonably to the risk, even if the harm ultimately was not averted."

21 *Farmer*, 511 U.S. at 844 ("A prison official's duty under the Eighth Amendment is to ensure

22 reasonable safety") (internal quotation marks and citation omitted).  To be deliberately indifferent,

23 a prison official must have a subjective "state of mind more blameworthy than negligence," akin

24 to criminal recklessness.  *Id.* at 835, 839-40.

25                 **b.**    **Analysis**

26         Viewing the record in the light most favorable to Plaintiff, the Court finds that there is a

27 triable issue of material fact as to whether defendants Benefield, Garcia and Sandoval were

28 deliberately indifferent to Plaintiff's serious medical needs, in violation of the Eighth Amendment.

1    Plaintiff's version of events conflicts with Defendants' version.

2         Defendants claim that Plaintiff never requested medical attention and they did not witness

3    him in any pain or distress.

4         Plaintiff proffers the following version of events.  Plaintiff alleges that defendant Garcia's

5    violent use of force caused injury to Plaintiff's right knee such that Plaintiff required assistance

6    from another inmate to walk to the holding cage; that Plaintiff requested medical attention; that

7    defendants Benefield, Garcia and Sandoval denied this request; and that the subsequent failure to

8    treat the knee earlier resulted in constant pain over the next ten days and eventually required a

9    seven-day lay-in.

10        The record casts doubt on the reliability of Defendants' version of events and lends support

11   to Plaintiff's version of events.

12        A close examination of the record indicates that Plaintiff was not provided any treatment in

13   response to the Form 7362 submitted on March 3, 2016.  Former Pelican Bay State Prison Chief

14   Physician and Surgeon Allen reviewed the relevant medical records and noted that Plaintiff was

15   not seen in response to the Form 7362 until more than seven days after the event, and received no

16   medical treatment for his knee during that time, such as ice, heat, wrapping or weight-bearing

17   support, pain medicine, anti-inflammatory medication, or simple advice as to how to avoid

18   aggravating the injury.  Allen Decl. ¶¶ 69-71, 91-94 (ECF No. 86-3 at 108, 110-111).  Although

19   SVSP Chief Physician & Surgeon Dr. Bright states that the 7362 form was triaged by a medical

20   staff member based on the seriousness of the medical condition reported, nothing on the Form

21   7362 indicates that a medical staff member evaluated Plaintiff's condition in any way in

22   processing the Form 7362, and the medical staff notations on this Form 7362 indicate that his form

23   was not reviewed until March 5 or 7, 2016.  Bright Decl. ¶ 9 (ECF No. 45-9 at 4); ECF No. 45-11

24   at 9.  Defendants misleadingly imply that Plaintiff's right knee was treated when he was examined

25   by a physical therapist on March 7 and 14, ECF No. 45 at 28, but the record does not support this

26   assertion.  Rather, these appointments appear to be part of the course of physical therapy

27   prescribed for Plaintiff in October 2015 and started in November 2015.  ECF No. 45-11 at 24

28   (Oct. 21, 2015 request for physical therapy); ECF No. 45-11 at 8, 10-11, 13-15, 17-18 (physical

United States District Court
Northern District of California

48

1    therapy appointments on November 25, 2015; December 2, 9, 16, 23, 2015; February 10, 22,

2    2015; and March 7, 2016).  The physical therapy appointments were not scheduled in response to

3    Plaintiff's Form 7362 submitted on March 3 or 10, 2016, or for the purpose of addressing any

4    injury caused on March 3, 2016.

5         The record also shows that standard CDCR protocol was not followed, which calls into

6    question whether Defendants responded reasonably to address Plaintiff's serious medical needs.

7    Former Pelican Bay State Prison Chief Physician and Surgeon Allen reports that standard CDCR

8    procedure is to respond to Form 7362s within 72 hours, and to fill out a Form 7219, Medical

9    Report of Injury or Unusual Occurrence, as soon as practicable after the use of force.  Allen Decl.

10   ¶¶ 42-47, 67-68.  Here, the Form 7362 was not responded to for eleven days, and the Form 7219

11   was completed seven days after the event.

12        Finally, there is a triable issue of fact as to the reliability of Dr. Bright's conclusion that the

13   increased pain felt by Plaintiff between March 7 and 14 is not attributable to the March 3, 2016

14   incident.  Dr. Bright bases his conclusion on his review of the records and his understanding of

15   chondromalacia patella.  Bright Decl. ¶ 11 (ECF No. 45-9 at 5).  Yet there was no medical

16   examination of Plaintiff at the time of the event or in the four days following the event, meaning

17   the medical records are silent as to the extent of the injury on March 3, 2016, and therefore

18   provide little support for Dr. Bright's conclusion.  And Dr. Allen's review of the medical records

19   leads him to the opposite conclusion—that Plaintiff's injury *was* due to the use of force on March

20   3, 2016.  Allen Decl. ¶ 94 (ECF No. 86-3 at 111).

21        At summary judgment, the Court must assume the truth of the evidence submitted by the

22   nonmoving party.  *See T.W. Elec. Serv.*, 809 F.2d at 631.  Under Plaintiff's version of events, a

23   jury could reasonably find that Plaintiff had a serious medical need; defendants Benefield, Garcia

24   and Sandoval were aware of this serious medical need; and that defendants Benefield, Garcia and

25   Sandoval refusal Plaintiff's reasonable request for medical attention, causing him to wait nearly

26   two weeks for medical attention.  The Court therefore DENIES Defendants' motion for summary

27   judgment with respect to the claim that defendants Benefield, Garcia and Sandoval were

28   deliberately indifferent to Plaintiff's serious medical needs on March 3, 2016, when they denied

United States District Court
Northern District of California

49

1    his request for medical attention for his right knee.

2                  **5.      Qualified Immunity**

3           Qualified immunity is an entitlement, provided to government officials in the exercise of

4    their duties, not to stand trial or face the other burdens of litigation.  *Saucier v. Katz*, 533 U.S. 194,

5    200 (2001). The doctrine of qualified immunity attempts to balance two important and sometimes

6    competing interests—"the need to hold public officials accountable when they exercise power

7    irresponsibly and the need to shield officials from harassment, distraction, and liability when they

8    perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal

9    quotation marks and citation omitted).  "The purpose of this doctrine is to recognize that holding

10   officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult

11   decisions in challenging situations, thus disrupting the effective performance of their public

12   duties." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009).  To determine whether an officer is

13   entitled to qualified immunity, the Court must consider whether (1) the officer's conduct violated

14   a constitutional right, and (2) that right was clearly established at the time of officer's misconduct.

15   *Pearson*, 555 U.S. at 232.  Courts may "exercise their sound discretion in deciding which of the

16   two prongs of the qualified immunity analysis should be addressed first in light of the

17   circumstances in the particular case at hand." *Id.* at 236.  If there was no constitutional violation,

18   the Court need not inquire further into the second prong.  *See Cty. of Sacramento v. Lewis*, 523

19   U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of

20   qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation

21   of a constitutional right at all.").

22          Defendants argue that, even if the Court denies summary judgment on the merits, they are

23   entitled to qualified immunity.  However, they base their arguments on their version of the events,

24   which are contradicted by Plaintiff's version of events.

25          Defendants argue that they are entitled to qualified immunity on Plaintiff's First

26   Amendment access to the courts claim because no reasonable officer would have known that they

27   violated the law when an inmate fails to timely file pleadings or fails to request additional time

28   from the court to do so.  However, there is a triable issue of material fact as to whether Plaintiff

United States District Court
Northern District of California

1    was reasonably denied PLU status, and whether the denial of PLU status, the denial of paper and

2    pen-filler, and the refusal to allow Plaintiff to access the law library to make photocopies

3    constituted active interference with Plaintiff's ability to litigate. Accepting Plaintiff's version of

4    the facts as true, as required at this stage, a jury could reasonably find that defendants Benefield

5    and Colvin's actions and inactions denied Plaintiff access to the courts, in violation of the First

6    amendment. At the time of the relevant events, it would have been clear to a reasonable

7    correctional officer that it was unconstitutional to erect barriers that would actively interfere with

8    an inmate's right to litigate a case involving the conditions of his confinement. *Silva v. Di*

9    *Vittorio*, 658 F.3d at 1102.

10            Defendants argue that they are entitled to qualified immunity on Plaintiff's First

11    Amendment retaliation claims based on searching his cell because the cell searches were required

12    by prison regulations and necessary to detect and control contraband and to maintain prison

13    security. However, there is a triable issue of material fact as to whether defendants Benefield and

14    Garcia conducted the cell searches solely as part of their required daily searches or because they

15    were retaliating against Plaintiff for his grievance activity. Accepting Plaintiff's version of the

16    facts as true, as required at this stage, a jury could reasonably find that defendants Benefield and

17    Garcia searched and trashed Plaintiff's cell in retaliation for his grievance activity. For purposes

18    of the qualified immunity analysis, *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310 (9th Cir.

19    1989), clearly established "that it is unlawful for the government to deliberately retaliate against a

20    citizen for exercising his right to comment on (and publicly) criticize government officials' actions

21    and his right to access the courts and administrative appeals process for redress of grievances,"

22    *CarePartners v. Lashway*, 545 F.3 867, 882 (9th Cir. 2008), and *Bruce v. Ylst*, 351 F.3d 1283,

23    1289 (9th Cir. 2003), clearly established that a government official may not use an otherwise valid

24    procedure as a ruse or a cover to silence and punish an inmate.

25            Defendants argue that they are entitled to qualified immunity on Plaintiff's Eighth

26    Amendment excessive force claim because no reasonable officer would have known that assisting

27    an inmate up from the ground after he refused to return to his cell and spontaneously dropped to

28    the ground violated the Eighth Amendment. However, there is a triable issue of material fact as to

1    whether Plaintiff dropped to the ground or he fell to the ground due to defendant Garcia's

2    unnecessary and violent jerking of the handcuffs in an attempt to have Plaintiff return to his cell so

3    that defendants Garcia and Benefield could cover up their misconduct.  Accepting Plaintiff's

4    version of the facts as true, as required at this stage, a jury could reasonably find defendant Garcia

5    used excessive force in violation of the Eighth Amendment when he jerked on Plaintiff's

6    handcuffs.  At the time of the relevant events, it would have been clear to a reasonable correctional

7    officer that it was unconstitutional to maliciously and sadistically apply force with the intent to

8    cause harm when the inmate does not pose a threat, as Plaintiff alleges happened here.  *Jeffers*,

9    267 F.3d at 910-11 (force that is applied "maliciously and sadistically for the very purpose of

10   causing harm" is violation of Eighth Amendment.)

11          Defendants argue that they are entitled to qualified immunity on Plaintiff's Eighth

12   Amendment medical needs claim because no reasonable officer would have known that requiring

13   an inmate who did not request medical care or appear to need medical care to return to his cell

14   violated the Eighth Amendment.  However, there is a triable issue of material fact as to whether

15   Plaintiff requested medical care and whether his knee was injured.  Accepting Plaintiff's version

16   of the facts as true, as required at this stage, a jury could reasonably find that the denial of

17   Plaintiff's request for medical care constituted a failure to take reasonable steps to abate the risk of

18   serious harm posed by Plaintiff's knee injury.  At the time of the relevant events, it would have

19   been clear to a reasonable correctional officer that it was unconstitutional to purposefully fail to

20   respond to a prisoner's possible medical need, as Plaintiff alleges happened here.  *Jett v. Penner*,

21   439 F.3d 1091, 1096 (9th Cir. 2006) (finding that doctor violated Eighth Amendment when he was

22   aware that prisoner required aftercare for fractured thumb but did not ensure the aftercare followup

23   with orthopedist until six months after injury).

24          Defendants are not entitled to qualified immunity based on the record currently before the

25   Court.

26                    **6.    State-law Negligence Claim**

27          Defendants argue that they are entitled to summary judgment with respect to Plaintiff's

28   state-law negligence claim because Plaintiff has not demonstrated that defendant Garcia owed him

a duty of care, or that defendant Garcia breached any such duty of care, or that defendant Garcia was the proximate cause of Plaintiff's injury; and because the negligence claim is premised on allegations of intentional conduct.  In the alternative, Defendants argue that Plaintiff has not complied with the requirement to file a claim with the California Victims Compensation and Government Claims Board prior to filing a lawsuit seeking monetary damages against a public entity.  ECF No. 45 at 31-32; ECF No. 87 at 16-17.  Plaintiff argues that the Eighth Amendment imposes on defendant Garcia a duty to protect Plaintiff from harm; that defendant Garcia handcuffed Plaintiff with the intent to use force to drag Plaintiff into his cell and yanked Plaintiff's handcuffs violently to knock Plaintiff off balance, all with the reasonable probability that Plaintiff would be injured pursuant to the use of force.  Plaintiff also has provided a declaration from a former CDCR physician regarding appropriate medical treatment for, and relevant prison policy regarding, use of force incidents which he alleges creates a triable issue of fact as to whether defendant Garcia's use of force unjustifiable; whether defendant Garcia's use of force was the direct and proximate cause of Plaintiff's knee injury; and whether the knee injury was caused by Plaintiff's preexisting issues with the knee.  Plaintiff also argues that he has provide evidence of a culture among SVSP correctional officers that supports the assaulting of inmates, and it can be reasonably inferred from this culture that defendant Garcia intended to cause Plaintiff harm because Plaintiff is an outspoken prisoner.  Finally, Plaintiff argues that his failure to comply with the California Tort Claims Act should be excused because he was deterred from filing a claim, due to SVSP correctional officials' constant harassment and retaliatory actions and his fear that any future filings would result in further retaliation.

As explained below, the Court finds that Plaintiff's failure to comply with the California Tort Claims Act requires the Court to dismiss this claim, and declines to address this claim on the merits.

The California Tort Claims Act provides that a plaintiff cannot sue a public entity or employee for monetary damages unless he has first presented a written claim to the appropriate entity and the that claim has been acted upon by that entity.  *See* Cal. Gov't Code §§ 905, 945.4, 950.2; *Mangold v. California Pub. Utilis. Comm'n.*, 67 F.3d 1470, 1477 (9th Cir. 1995) ("The

California Tort Claims Act requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part.").  The California Tort Claims Act requires the plaintiff to file a claim with the VCGCB no more than six months after the cause of action has accrued.  Cal. Gov't Code § 911.2(a); *Curtis T. v. County of Los Angeles*, 123 Cal. App. 4th 1405, 1415 (2004).  State law tort causes of action generally accrue when the wrongful act is committed.  *Collins v. Cty. of Los Angeles*, 241 Cal.App.2d 451, 454 (Cal. Ct. App. 1966).  "Timely claim presentation is not merely a procedural requirement, but is . . . a condition precedent to plaintiff's maintaining an action against defendant and thus an element of the plaintiff's cause of action."  *Shirk v. Vista Unified Sch. Dist.*, 42 Cal.4th 201, 209 (Cal. 2007), *superseded by statute on other grounds as stated in A.M. v. Ventura Unified School Dist.*, 3 Cal.App.5th 1252, 1258 (Cal. Ct. App. 2016) (citations omitted).  If the plaintiff misses the deadline set forth in Cal. Gov't Code § 911.2(a), the plaintiff may seek leave to file a late claim by filing an application within a year after the accrual of the cause of action.  Cal. Gov't Code § 911.4.  If the VCGCB denies the application for leave to file a late claim, the plaintiff may file a petition with the appropriate court requesting relief from the claim presentation requirement.  Cal. Gov't Code § 911.8.  State tort claims included in a federal action, including those filed pursuant to 42 U.S.C. § 1983, may proceed only if the claims were presented in compliance with the California Government Claims Act.[10]  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988); *Ortega v. O'Connor*, 764 F.2d 703, 707 (9th Cir. 1985), *rev'd in part on othe grounds by* 480 U.S. 709, (1987).

It is undisputed that Plaintiff has not complied with the claim presentation requirement set forth in the California Tort Claims Act with respect to his state-law negligence claim against defendant Garcia.  Plaintiff did not file any claim regarding this state-law negligence claim.

---

[10] The obligation to comply with the Government Claims Act is independent of the obligation to exhaust administrative remedies pursuant to the Prison Litigation Reform Act.  *Parthemore v. Col*, 221 Cal. App. 4th 1372, 1376 (Cal. Ct. App. 2013); *see also Martinez v. Tilton*, No. 1:10-CV-01501-SKO, 2013 WL 5670869, *3 (E.D. Cal. Oct. 16, 2013) ("the prison's inmate appeals process and the Government Claims Act process are separate processes and there is no support for a finding that the allegedly improper cancellation of Plaintiff's inmate appeal had any effect whatsoever on his ability to timely present his Government Claims Act claim.").

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiff requests that the Court excuse his non-compliance, stating that he was deterred from

2    pursuing relief for the excessive force/negligence claim due to the harassment he was suffering,

3    specifically, the denial of access to the law library, the refusal to provide indigent supplies, the

4    retaliatory cell searches, the false disciplinary reports, and the excessive force itself.  Plaintiff

5    argues that the Ninth Circuit has excused a failure to exhaust administrative remedies under

6    similar circumstances, citing to *Sapp v. Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010).  ECF No.

7    86 at 45-46.  Defendants argue that Plaintiff's claim that he feared further retaliation lacks

8    evidentiary support, as he filed nine inmate grievances from September 2015 through March 2016,

9    and sent out numerous pieces of legal mail during that same period.  ECF No. 87 at 17.

10           The Court finds that Plaintiff has failed to demonstrate facts excusing his non-compliance

11   with the claim presentation requirement, and that the Court is therefore barred from considering

12   his state-law negligence claim against defendant Garcia.  There are instances where failure to

13   comply with the claim presentation requirement is excused, such as where the plaintiff has

14   demonstrated substantial compliance with the presentation requirement, *Life v. Cnty. of Los*

15   *Angeles*, 227 Cal. App. 3d 894, 899 (Cal. Ct. App. 1991); or where the plaintiff can demonstrate

16   that he is entitled to equitable estoppel where the defendants prevented or deterred the filing of a

17   timely claim, *Ard v. Cnty. of Contra Costa*, 93 Cal. App. 4th 339, 346–47 (Cal. Ct. App. 2001).[11]

18   Here, however, Plaintiff has not filed any government claim regarding defendant Garcia's alleged

19   use of excessive force, or made any attempt to comply with the claim presentation requirement.

20   Plaintiff has not cited any caselaw or statutes, federal or state, and the Court is unaware of any,

21   that excuse complete non-compliance with the claim presentation requirement.  *Sapp's* holding

22   concerns a federal statute, namely the exhaustion requirement set forth in the Prison Litigation

23   Reform Act.  *Id.* at 823 ("we hold that improper screening of an inmate's administrative

---

[11] It is unclear whether a federal court can excuse non-compliance with the California Tort Claims Act.  Pursuant to the mechanism set forth in the California Tort Claims Act, it appears that a plaintiff should seek relief in the state superior court to have non-compliance excused.  The California Tort Claims Act provides that plaintiff may file an application for leave to file a late claim, Cal. Gov't Code § 911.4, and if that application is denied, the plaintiff may then file a petition in the state superior court, requesting that he be relieved from the claim presentation requirement set forth in Cal. Gov't Code § 945.4, Cal. Gov't Code § 946.6.

grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA"). *Sapp* does not address, much less make any holding regarding, the claim presentation requirement set forth in the California Tort Claims Act.  Moreover, the record shows that Plaintiff actively used the prison grievance system to challenge misconduct by correctional officials, casting doubt as to whether Plaintiff failed to file a government claim because he feared further retaliation.  The alleged act of excessive force took place on March 3, 2016.  Accordingly, Plaintiff was required to file a claim with the VCGCB by September 3, 2016, or to file an application for leave to file a late claim by March 3, 2017.  During the March 3, 2016 to March 3, 2017 time period, Plaintiff filed at 14 grievances that were addressed at the third level of review.  ECF No. 45-29 at 4-5 (15 grievances received at third level of review during relevant time period).  Plaintiff filed three more grievances between March 3, 2017 and August 16, 2017, when he filed this action.  Plaintiff's total failure to comply with the claim presentation requirement is fatal to his state-law negligence claim.  *Pac. Tel. & Tel. Co. v. Cnty. of Riverside*, 106 Cal. App. 3d 183, 188 (Cat. Ct. App. 1980) ("Compliance with the claims statute is mandatory, and failure to file a claim is fatal to the cause of action.").  The Court GRANTS summary judgment in favor of Defendants with respect to Plaintiff's state-law negligence claim against defendant Garcia.

## CONCLUSION

For the reasons set forth above, the Court orders as follows.

1.      The Court GRANTS Defendants' request for judicial notice.  ECF No. 45-42.

2.      The Court DENIES Plaintiff's request for judicial notice.  ECF No. 86 at 46-48.

The Court GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment, ECF No. 45, as follows.  The Court GRANTS summary judgment in favor of Defendants for failure to exhaust administrative remedies with respect to the following claims: (1) on November 16, 2015, Defendant Benefield refused Plaintiff's request for indigent supplies; (2) on December 8, 2015, defendant Benefield stated that he would not adhere by OP 34 and would not distribute indigent supplies to Plaintiff; (3) on December 14, 2015, defendant Benefield refused to release Plaintiff to attend law library; (4) in January 2016, defendant Benefield refused

to abide by the partial grant of Grievance No. SVSP-L-15-05194, which required SVSP correctional officials to provide Plaintiff with paper and pen-filler; (5) on February 23, 2015, Plaintiff was issued envelopes, but not provided paper or pen-filler; (6) on March 1-3, 2016, defendant Garcia denied Plaintiff's requests to access the law library; and (7) defendant Clavijo retaliated against Plaintiff when he threatened to restrict the phone privileges of inmates who had signed Plaintiff's group grievance.  The Court DISMISSES these claims without prejudice to re-filing once Plaintiff has exhausted administrative remedies with respect to these claims.  The Court GRANTS summary judgment in favor of Defendants with respect to Plaintiff's state-law negligence claim against defendant Garcia.  The Court GRANTS summary judgment in favor of Defendants with respect to the First Amendment access to the courts claim arising out of the denial of the September 2015 request for PLU status.  The Court DENIES summary judgment with respect to the following claims:  Defendants violated Plaintiff's First Amendment right to access the courts when there was an unwritten policy to not distribute pen-filler and paper to inmates working in the law library; defendant Benefield twice denied Plaintiff's request for the forms to apply for PLU status in the last two weeks of September 2015; in September and October 2015, defendant Benefield refused Plaintiff's requests for indigent supplies, in violation of Plaintiff's First Amendment right to access the courts; on October 15, 2015, defendant Benefield denied Plaintiff's request to access the law library to make photocopies, in violation of Plaintiff's First Amendment right to access the courts; and in October 2015, defendant Colvin denied Plaintiff's request for PLU status, in violation of Plaintiff's First Amendment right to access the courts.  Defendants retaliated against Plaintiff for engaging in protected in violation of the First Amendment's prohibition on violation when, on November 30, 2015, defendant Benefield told Plaintiff that because Plaintiff filed SVSP-L-15-05194, Plaintiff should not ask for shit while housed in Benefield's building, including legal forms, indigent supplies, and access to the Library Service, and that he would continue to harass Plaintiff and hinder his access to the law library; on December 1 and 9, 2015, defendant Benefield threatened Plaintiff and inmate Browne that he would restrict the phone privileges of inmates who signed Plaintiff's group grievance; on December 10, 2015, defendant Benefield trashed Plaintiff's cell for sending a letter to the

1   Ombudsman's office; on December 14, 2015, defendant Benefield refused to release Plaintiff from

2   his housing unit to attend law library and trashed Plaintiff's cell; on March 3, 2016, defendant

3   Benefield released Plaintiff to yard late; and on March 3, 2016, defendants Benefield and Garcia

4   trashed Plaintiff's cell.  Defendants Benefield and Garcia used excessive force on Plaintiff on

5   March 3, 2016, in violation of the Eighth Amendment, when defendant Garcia tugged violently

6   and unnecessarily on Plaintiff's handcuffs, causing him to fall to the floor and injure his knee.

7   Defendants Benefield, Garcia, and Sandoval were deliberately indifferent to Plaintiff's serious

8   medical needs on March 3, 2016, in violation of the Eighth Amendment, when they refused his

9   request for medical attention for his knee.

10          3.      The case is hereby REFERRED to Magistrate Judge Robert Illman for settlement

11  proceedings pursuant to the Pro Se Prisoner Mediation Program.  Such proceedings shall take

12  place within 120 days of the date this order is filed, or as soon thereafter as Magistrate Judge

13  Illman's calendar will permit.  Magistrate Judge Illman shall coordinate a place, time and date for

14  one or more settlement conferences with all interested parties and/or their representatives and,

15  within fifteen days of the conclusion of all settlement proceedings, shall file with the Court a

16  report thereon.  The Clerk is directed to serve Magistrate Judge Illman with a copy of this order

17  and to notify Magistrate Judge Illman that a copy of the Court file can be retrieved from the

18  Court's electronic filing database.

19          4.      In view of the referral, further proceedings in this case are hereby STAYED.  The

20  Clerk shall ADMINISTRATIVELY CLOSE this case until further order of the Court.  If the case

21  is not settled, the Court will enter a new scheduling order for further proceedings.

22          This order terminates ECF Nos. 45 and 86 at 46-48.

23          **IT IS SO ORDERED.**

24  Dated:  June 3, 2023

25          _____
26                          JON S. TIGAR
                    United States District Judge
27

28

58